EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Eric M. Pagán Díaz<br>(TS-11,471) | 2017 TSPR 108<br><br>198 DPR ____ |

Número del Caso: AB-2016-166

Fecha:    12 de junio de 2017

Abogado del promovido:

        Por Derecho Propio

Oficina de Inspección de Notarías:

        Lcdo. Manuel Ávila De Jesús
        Director

Materia:    La suspensión será efectiva el 20 de junio de 2017, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Eric M. Pagán Díaz
        (TS-11,471)                    **AB-2016-0166**

*PER CURIAM*

San Juan, Puerto Rico, a 12 de junio de 2017.

En esta ocasión nos vemos obligados a ejercer nuestra facultad disciplinaria en contra de un miembro de la profesión jurídica que ha incurrido en violaciones al Código de Ética Profesional y a la Ley Notarial de Puerto Rico. En atención a la inobservancia de los preceptos antes establecidos, suspendemos de la notaría al Lcdo. Eric M. Pagán Díaz de forma inmediata por un término de 3 meses.

A tales fines, procedemos a delimitar los hechos que nos mueven a imponer las medidas disciplinarias correspondientes.

I

El licenciado Pagán Díaz fue admitido al ejercicio de la abogacía el 18 de enero de 1996 y prestó juramento como notario el 8 de febrero de 1996. El 1 de junio de 2016 el Sr. José A. Rosario Sánchez presentó una queja ante este Tribunal en contra del licenciado Pagán Díaz. En esencia, adujo que el 24 de diciembre de 2012 el abogado otorgó una escritura de compraventa junto al Sr. Edwin Navarro Altaira de una propiedad perteneciente al señor Rosario Sánchez sin su conocimiento ni consentimiento. El señor Rosario Sánchez aclaró que le había otorgado un poder general, suscrito en inglés, a una amiga, la Sra. Lourdes Webb, para que lo ayudara con asuntos relacionados a la referida propiedad, incluyendo el alquiler de la misma. Sin embargo, sostuvo que nunca la autorizó a vender la propiedad. A esos efectos, el señor Rosario Sánchez alegó que utilizaron otro poder redactado en español, en el cual cree que copiaron su firma. Además, indicó que nunca recibió compensación alguna por la venta de la propiedad.

Por su parte, el licenciado Pagán Díaz contestó la queja presentada en su contra el 18 de julio de 2016. En síntesis, señaló que el 24 de diciembre de 2012 otorgó una escritura de protocolización de documentos de poder general (escritura número 57). El abogado indicó que dicho poder se otorgó para que la señora Webb, amiga del señor Rosario Sánchez, lo representara en la escritura de

compraventa (escritura número 58). Expuso que el señor Rosario Sánchez suscribió el poder protocolizado el 17 de septiembre de 2012 en Carolina del Norte. A su vez, adujo que el señor Rosario Sánchez se comunicó con él en varias ocasiones vía telefónica para indagar sobre la extensión del poder que iba a otorgar para consentir en la compraventa, pero no como vendedor ya que él había vendido el inmueble a otras personas mediante la escritura número 81 otorgada en San Juan, Puerto Rico, el 20 de marzo de 2003. Por consiguiente, el licenciado Pagán Díaz expresó que el señor Rosario Sánchez no era el dueño del inmueble vendido en la escritura de compraventa y que el poder era solamente para consentir a la venta, ya que la hipoteca que gravaba el inmueble estaba a su nombre. A esos fines, sostuvo que el señor Rosario Sánchez consintió a dicha venta. En cuanto a la firma del poder, alegó que ésta se podía corroborar con el original del poder que obra en su protocolo.

El 28 de julio de 2016 el señor Rosario Sánchez acudió nuevamente a este Tribunal. En esa ocasión, expuso que, del contenido del poder, surgía que el propósito del mismo no era para vender propiedades. Por otro lado, negó que hubiese tenido comunicación vía telefónica con el licenciado Pagán Díaz. Incluso, indicó que no conocía al abogado y que no fue hasta el 10 de junio de 2014 que consiguió su nombre y su número de teléfono. A su vez, añadió que el 7 de julio de 2014 se comunicó por primera

vez con el licenciado Pagán Díaz y lo visitó esa misma semana a su oficina, donde su secretaria le facilitó copia de las escrituras en cuestión.

Así las cosas, el 29 de noviembre de 2016 la Oficina de Inspección de Notarías (ODIN), a través de su Director el Lcdo. Manuel E. Ávila De Jesús, presentó su informe. En el mismo, concluyó que el licenciado Pagán Díaz infringió la Ley Notarial de Puerto Rico y el Código de Ética Profesional. Específicamente, señaló que el abogado impartió su fe notarial sobre hechos incorrectos al expresar que una parte se encontraba autorizada a comparecer en representación de su mandatario, cuando del poder conferido no surgía tal facultad, y omitió apercibir a los otorgantes sobre el estado registral real de la finca objeto de la escritura que originó la presente queja. Ante ello, determinó que el licenciado Pagán Díaz infringió los Arts. 2 y 15 de la Ley Notarial de Puerto Rico, así como los Cánones 18, 35 y 38 del Código de Ética Profesional. Además, indicó que éste también infringió el Canon 9 del Código de Ética Profesional al incumplir un requerimiento de la ODIN para que sometiera un estudio de título, así como ante la demora en contestar la queja. Por último, la ODIN recomendó la suspensión temporera del abogado del ejercicio de la notaría por 3 meses o, en la alternativa, que fuera censurado enérgicamente por la conducta incurrida.

Por otro lado, el 29 de diciembre de 2016 la Oficina de la Procuradora General (Procuradora General) presentó el informe correspondiente, en el cual coincidió con la ODIN sobre que el licenciado Pagán Díaz pudo incurrir en violaciones a los Arts. 2 y 15 de la Ley Notarial de Puerto Rico y a los Cánones 18, 35 y 38 del Código de Ética Profesional. Ello pues, entendió que el abogado dio fe de hechos falsos en una escritura de compraventa que no recogían la realidad registral de la finca en cuestión. Además, entendió que el licenciado también infringió el Canon 9 del Código de Ética Profesional al incumplir con los requerimientos de la ODIN para que presentara un estudio de título al cual éste hacía referencia para justificar los hechos expuestos en la escritura de compraventa.

Luego de exponer el trasfondo fáctico y procesal de este caso, enmarquemos la controversia dentro del Derecho aplicable.

## II

### A. La Ley Notarial de Puerto Rico

Es norma conocida que todo notario está obligado al cumplimiento estricto de la Ley Notarial de Puerto Rico, el Reglamento Notarial de Puerto Rico y los cánones del Código de Ética Profesional.[1] Estas disposiciones velan

---

[1] *In re Toro Imbernón*, 194 DPR 499, 504 (2016).

por que el notario ejerza su labor con esmero, diligencia y celo profesional.[2]

A esos efectos, el Art. 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original).

Así, cuando un notario autoriza una escritura, asevera bajo la fe pública que la transacción es válida y legítima.[3] Ante ello, el Estado le confiere al documento autorizado por el notario una presunción de credibilidad y certeza de que lo afirmado es cierto y correcto, y que concuerda con la realidad.[4] La fe pública notarial es la espina dorsal de todo el esquema de autenticidad notarial, por lo que quebrantarla conlleva la imposición de una severa medida disciplinaria.[5] Por ello, cuando el notario no cumple con los deberes que le impone la ley y

---

[2] Íd.; In re Ayala Oquendo, 185 DPR 572, 580 (2012); In re Martínez Almodóvar, 180 DPR 805, 815 (2011).

[3] In re Toro Imbernón, supra, pág. 505; In re Feliciano Ruiz, 117 DPR 269, 275 (1986).

[4] In re Toro Imbernón, supra.

[5] Íd.; In re Martínez Sotomayor, 189 DPR 492, 500 (2013); In re Collazo Sánchez, 159 DPR 769, 774 (2003).

el ordenamiento ético, incurre en una falta que conlleva consecuencias disciplinarias.[6]

En cuanto a la obligación del notario de dar fe sobre la capacidad de los otorgantes, el Art. 15(e) de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2033(e), indica que la escritura pública debe contener "la fe expresa del notario [...] de que a su juicio éstos tienen la capacidad legal necesaria para otorgar el acto o contrato de que se trata". Así, en el descargo de su encomienda, el notario tiene el deber de calificar la capacidad de las partes.[7] "La calificación de la capacidad viene impuesta por la naturaleza y la finalidad del instrumento público: se trata de un requisito que conceptual y lógicamente viene impuesto *ab initio* para conseguir la eficacia del documento y del acto documentado".[8]

Además, la capacidad de los otorgantes guarda correspondencia lógica con el consentimiento de los contratantes, requisito *sine qua non* de los contratos.[9] La regla general es que su existencia surja con la comparecencia y presencia de la persona ante el notario; la excepción es el mandato o poder.[10] A esos fines, la profesora Torres Peralta explica lo siguiente:

---

[6] *In re Toro Imbernón*, supra.

[7] *In re Martínez Almodóvar*, supra, pág. 816.

[8] Íd.; *In re Feliciano Ruiz*, supra, pág. 275.

[9] *In re Martínez Almodóvar*, supra, pág. 817.

[10] Íd.; *In re Feliciano Ruiz*, supra, pág. 276.

Es indispensable dar fe de la capacidad legal de los otorgantes, como requisito para proceder al otorgamiento y autorización de un instrumento público. La Ley requiere que el Notario haga constar en la escritura que, a su juicio, los otorgantes tienen la capacidad legal necesaria para el otorgamiento del instrumento. Tal aseveración ha de estar basada en un juicio informado y sabio, no en un acto caprichoso e infundado de parte del Notario.

La aseveración que a ese efecto se haga en la escritura pública estará basada en los dichos de cada uno de los otorgantes. El Notario, no obstante, tomará en cuenta el conocimiento que tiene cada otorgante, así como su capacidad de observación y de su percepción personal y si necesario, la investigación que debe efectuarse en las circunstancias. **Este requisito se extiende, de igual manera, al compareciente representante en una escritura pública en que dicho otorgante comparezca como mandatario, agente, apoderado o comisionista y en toda otra capacidad representativa**. (Énfasis suplido).[11]

En _Feliciano v. Ross_, 165 DPR 649, 658 (2005), expresamos que "[e]s deber del notario que autoriza el otorgamiento de una escritura [...] hacer las averiguaciones mínimas que requieren las normas de la profesión". En ese sentido, indicamos en _In re Davidson Lampón_, 159 DPR 448, 461 (2003), que debido a que "la función del notario trasciende la de un autómata legalizador de firmas y penetra al campo de la legalidad de la transacción que ante él se concreta", al autorizar una escritura el notario debe: (1) indagar la voluntad de los otorgantes; (2) formular la voluntad indagada; (3) investigar ciertos hechos y datos de los que depende

---

[11] S. Torres Peralta, _El Derecho Notarial Puertorriqueño_, ed. especial, San Juan, Pubs. STP, 1995, Sec. 8.27.

la eficacia o validez del negocio, y (4) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. (Énfasis suprimido).[12]

B. El Código de Ética Profesional

El Código de Ética Profesional establece las normas mínimas de conducta que debe exhibir todo miembro de la abogacía.[13] Así, pues, el Canon 9 del Código de Ética Profesional, 4 LPRA AP. IX, dispone que todo abogado debe "observar para con los tribunales una conducta que se caracterice por el mayor respeto". Ante una violación a este canon, "procede suspender inmediata e indefinidamente de la práctica de la abogacía en nuestra jurisdicción a cualquier miembro de la profesión legal que opta por ignorar nuestras órdenes y muestra indiferencia ante nuestros apercibimientos de sanciones disciplinarias".[14] Asimismo, este Tribunal interpretó que el Canon 9 se extiende tanto a los requerimientos de este Tribunal como a los de la ODIN.[15]

---

[12] In re Martínez Almodóvar, supra, págs. 817-818. Sobre la obligación del notario de investigar los antecedentes registrales del negocio jurídico que autoriza, véanse: In re Ramos Meléndez y Cabiya Ortiz, 120 DPR 796, 801-802 (1988); Chévere v. Cátala, 115 DPR 432, 442-444 (1984).

[13] In re González Acevedo, 2017 TSPR 25, 197 DPR ___ (2017).

[14] Íd.; In re Colón Collazo, 2016 TSPR 184, 196 DPR ____ (2016); In re Colón Cordovés, 195 DPR 543, 547 (2016).

[15] In re González Acevedo, supra; In re Colón Collazo, supra; In re Ezratty Samo, et al., 2016 TSPR 19, 194 DPR ____ (2016).

Por otra parte, el Canon 18 del Código de Ética Profesional, *supra*, establece el deber de diligencia y competencia con el que debe obrar todo profesional del Derecho. En lo que nos concierne, hemos interpretado que este canon tiene una "modalidad distinta cuando se trata de la función notarial".[16] Debido a la naturaleza de las funciones del notario y la delegación de impartir fe pública, éste tiene un deber mayor de diligencia y competencia.[17] Es por ello que, "un notario que desconoce las normas jurídicas relativas al ejercicio de su profesión vulnera la naturaleza misma del notariado e incurre en una violación a las normas éticas de nuestra jurisdicción".[18]

El Canon 35 del Código de Ética Profesional, *supra*, le impone a la clase togada del país el deber de proceder con integridad, sinceridad y honradez frente a todos y en cualquier escenario.[19] Este deber obliga a los abogados ante los tribunales, con sus representados, con las partes adversas y hasta en las relaciones profesionales con sus compañeros.[20] Cónsono con lo anterior, para

---

[16] In re González Acevedo, supra; In re Portela Martínez, 191 DPR 84, 90 (2014).

[17] In re González Acevedo, supra; In re Portela Martínez, supra; In re Colón Ramery, 138 DPR 793, 799 (1995).

[18] In re González Acevedo, supra; In re Portela Martínez, supra; In re Vargas Velázquez, 190 DPR 730, 735 (2014).

[19] In re Ramírez Salcedo, 2016 TSPR 174, 196 DPR ___ (2016); In re Reyes Coreano, 190 DPR 739, 756 (2014). Véanse, además: In re Sierra Arce, 192 DPR 140, 147 (2014); In re Astacio Caraballo, 149 DPR 790, 797 (1999).

[20] In re Ramírez Salcedo, supra; In re Astacio Caraballo, supra.

infringir el Canon 35 "[l]o fundamental es que se falte [objetivamente] a los valores de honradez y veracidad, pilares de la profesión legal".[21] Por consiguiente, no es defensa no haber procedido deliberadamente, de mala fe, con la intención de engañar o defraudar, así como tampoco que no se le haya causado perjuicio a un tercero.[22]

Es meritorio puntualizar que **a todo abogado le está vedado proveer a los foros judiciales información falsa, inconsistente con la verdad, así como ocultar información cierta que deba ser revelada.**[23] No es sincero ni honrado inducir a error al tribunal empleando artificios o una relación falsa de hechos o Derecho.[24] Cuando un abogado le miente a un tribunal bajo juramento para promover su causa, falta a su deber de actuar con integridad.[25] "La mentira degrada el carácter y envilece el espíritu y es antítesis de la conducta recta y honorable que el Código de Ética Profesional exige de todo abogado. La palabra de éste debe en todo momento ser tan buena y tan leal como la del propio magistrado, porque tanto el juez como el

---

[21] In re Ramírez Salcedo, supra; In re Reyes Coreano, supra.

[22] In re Ramírez Salcedo, supra; In re Reyes Coreano, supra; In re Nieves Nieves, 181 DPR 25, 41-42 (2011); In re Astacio Caraballo, supra, pág. 799.

[23] In re Ramírez Salcedo, supra; In re Astacio Caraballo, supra, pág. 798.

[24] In re Ramírez Salcedo, supra.

[25] In re Ramírez Salcedo, supra; In re Padilla Rodríguez, 145 DPR 536, 538 (1998); In re Currás Ortiz, 141 DPR 399, 402 (1996).

abogado son partícipes en una función excelsa que jamás debe ser lastimada por la falsedad".[26]

De igual modo, a la luz de este precepto ético **un abogado no puede suscribir hechos inconsistentes con la realidad.**[27] **Todo jurista ostenta la obligación ineludible de asegurarse que los datos consignados en cada documento que firma o redacta son veraces.**[28] La verdad es el principio sobre el cual se erige la confianza ciudadana en la profesión legal y en las instituciones de justicia, por lo que independientemente de si el abogado actúa en su función profesional o personal, su falta de sinceridad es absolutamente injustificable.[29]

Como es sabido, la profesión de la abogacía y la notaría son ejes importantes en el ejercicio encomiable de impartir y adelantar la justicia en nuestra sociedad.[30] Por ello, se requiere una continua introspección para ponderar si las actuaciones son cónsonas con las responsabilidades que acarrea ser un servidor de la justicia.[31] En vista de ello, el Canon 38 del Código de Ética Profesional, *supra*, dispone que "[e]l abogado

---

[26] In re Ramírez Salcedo, supra; In re Ramos y Ferrer, 115 DPR 409, 412 (1984).

[27] In re Ramírez Salcedo, supra; In re Rodríguez Gerena, 194 DPR 917, 923 (2016); In re Belk, Serapión, 148 DPR 685, 691 (1999).

[28] In re Ramírez Salcedo, supra; In re Martínez, Odell II, 148 DPR 49, 54 (1999); In re Belk, Serapión, supra.

[29] In re Ramírez Salcedo, supra.

[30] In re González Acevedo, supra.

[31] Íd.; In re Fingerhut Mandry, 2016 TSPR 3, 196 DPR ____ (2016).

deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". El precitado canon traza un deber para con la colectividad, pues, "cada abogado es un espejo en [el] que se refleja la profesión".[32]

### III

En este caso, el señor Rosario Sánchez señaló que tanto él como su esposa no prestaron su consentimiento para el otorgamiento de la escritura número 58 mediante la cual supuestamente le conferían a la señora Webb el poder para representarlos en una compraventa. A su vez, indicó que el poder conferido a la señora Webb no la autorizaba a enajenar la propiedad objeto de la compraventa. Finalmente, adujo que la escritura número 58 contiene información errónea, pues dispone que el señor Rosario Sánchez había vendido previamente el mencionado inmueble.

De los documentos que obran en el expediente surge que, en efecto, la información sobre los antecedentes del negocio jurídico efectuado contenida en la escritura número 58, otorgada por el licenciado Pagán Díaz, se encuentra incompleta y alude a datos incorrectos. Específicamente, en el referido instrumento público no se

---

[32] *In re González Acevedo*, supra; *In re Coll Pujols*, 102 DPR 313, 319 (1974).

menciona el negocio jurídico recogido en la escritura número 15, en la cual el señor Rosario Sánchez y su esposa, representados por la señora Webb, les vendieron a los esposos García-Colón la propiedad en cuestión, sino que afirmaba erróneamente que la titularidad de los esposos García-Colón surgía de la escritura número 81. Además, el abogado dio fe de que la propiedad estaba gravada mediante una hipoteca a favor de Doral Mortgage LLC, constituida el 21 de septiembre de 2011 por $254,583.33, sin hacer referencia a la hipoteca inscrita a favor de Oriental Bank and Trust por $211,100, constituida mediante la escritura número 114 del 20 de marzo de 2003 e inscrita en el Registro de la Propiedad el 3 de junio de 2003, hipoteca que no había sido cancelada hasta la última certificación registral emitida en septiembre de 2016.

Así pues, el licenciado Pagán Díaz, como parte de su función notarial, debía conocer la situación y condición registral de la finca antes de otorgar la escritura número 58 de compraventa, así como advertirles sobre esa situación a las partes. El abogado no podía descansar en las manifestaciones del señor Rosario Sánchez o de cualquier otra parte sobre la situación registral de la propiedad. Además, cabe destacar que los compradores estaban adquiriendo una propiedad de unos vendedores que no eran los dueños registrales de la misma al momento de otorgarse dicha escritura, y que estaba gravada con una

hipoteca que no se mencionó en el instrumento público. Sin embargo, no surge de la escritura ninguna advertencia específica al respecto. Consecuentemente, las mencionadas actuaciones del licenciado Pagán Díaz infringen los Arts. 2 y 15 de la Ley Notarial de Puerto Rico y los Cánones 18 y 38 del Código de Ética Profesional.

Por otra parte, en la escritura número 58 se especificó que la señora Webb había comparecido a la misma en representación del señor Rosario Sánchez y su esposa, en virtud del poder protocolizado mediante la escritura número 57. Sin embargo, del contenido de la escritura número 57 no surge que dentro de las facultades conferidas a la señora Webb se encontrara el enajenar o consentir a la enajenación de la propiedad mencionada. Debido a que el notario acreditó falsa o incorrectamente en la escritura número 58 que la señora Webb estaba facultada mediante la escritura número 57 a representar al señor Rosario Sánchez y a su esposa en la compraventa, éste infringió el Art. 2 de la Ley Notarial de Puerto Rico, así como los Cánones 18, 35 y 38 del Código de Ética Profesional.

Finalmente, destacamos el hecho de que en la escritura número 58 el licenciado Pagán Díaz hizo referencia a un estudio de título que nunca presentó en este procedimiento disciplinario, a pesar de habérsele requerido por la ODIN. El abogado tampoco justificó su incumplimiento ante la ODIN y no fue hasta que presentó

su contestación ante la Procuradora General que indicó que su incumplimiento se debió a que no contaba con dicho estudio de título en su expediente. Esa conducta, en sí misma, constituye un incumplimiento con el Canon 9 del Código de Ética Profesional.

IV

Por los fundamentos expuestos, decretamos la suspensión inmediata del ejercicio de la notaría del licenciado Pagán Díaz por el término de 3 meses.

Se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del licenciado Pagán Díaz y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación en cuanto a los actos realizados por el licenciado Santos Ortiz durante el periodo en que la misma estuvo vigente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia.

Se dictará sentencia de conformidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In Re:


Eric M. Pagán Díaz

    (TS-11,471)

AB-2016-0166

---

*SENTENCIA*

En San Juan, Puerto Rico, a 12 de junio de 2017.

Por los fundamentos expuestos, decretamos la suspensión inmediata del ejercicio de la notaría del licenciado Pagán Díaz por el término de 3 meses.

Se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del licenciado Pagán Díaz y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación en cuanto a los actos realizados por el licenciado Santos Ortiz durante el periodo en que la misma estuvo vigente.

**Notifíquese** personalmente esta Opinión *Per Curiam* y Sentencia.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez, no intervino.


        Juan Ernesto Dávila Rivera
       Secretario del Tribunal Supremo