EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br><br>Laura A. Dahdah de Surillo<br>(TS-8,641) | 2023 TSPR 124<br><br>213 DPR ___ |
|---|---|

Número del Caso: AB-2022-0221


Fecha: 12 de septiembre de 2023


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director


Abogada de la Promovida:

    Por derecho propio




Materia: Conducta Profesional – Suspensión del ejercicio de la notaría por infracción al Art. 2 de la Ley Notarial de Puerto Rico; el Art. 131 de la Ley de Registro de la Propiedad Inmobiliaria y los Cánones 18, 35 y 38 del Código de Ética Profesional.



Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Laura A. Dahdah de Surillo          AB-2022-0221
    (TS-8,641)

*PER CURIAM*

En San Juan, Puerto Rico, a 12 de septiembre de 2023.

Nuevamente nos vemos en la obligación de suspender del ejercicio de la notaría a un miembro de la profesión legal, esta vez por infringir el Art. 2 de la Ley Notarial de Puerto Rico, *infra*; el Art. 131 de la Ley del Registro de la Propiedad, *infra,* y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Veamos.

I.

La Lcda. Laura Dahdah de Surillo (en adelante, "licenciada Dahdah de Surillo") fue admitida al ejercicio de la abogacía el 27 de febrero de 1987 y al ejercicio de la notaría el 18 de junio de 1987.

Allá para octubre de 2022, el Lcdo. Juan Manuel Ponce Fantauzzi (en adelante, "licenciado Ponce Fantauzzi") presentó ante este Tribunal una queja disciplinaria en contra de la licenciada Dahdah de Surillo por ésta presuntamente haber incurrido en posibles violaciones a la Ley Notarial de Puerto Rico, *infra*, la Ley del Registro de la Propiedad, *infra*, y al Código de Ética Profesional, *infra*. Lo anterior se debe a que la referida letrada, al parecer, otorgó, -- en beneficio de determinadas corporaciones --, dos escrituras de permuta sobre la totalidad de ciertos bienes inmuebles pertenecientes en común proindiviso al licenciado Ponce Fantauzzi y su hermano, el Sr. Ramón Ponce Fantauzzi (en adelante, "señor Ponce Fantauzzi"), sin hacer mención en los referidos instrumentos públicos del aludido letrado.

En su escrito, el licenciado Ponce Fantauzzi explicó que, en las mencionadas escrituras, no se especificó que él era dueño del 50% de las propiedades inmuebles permutadas, aunque tanto la parte otorgante, -- entiéndase, la Sra. Zahidée Fantauzzi González[1] --, como la licenciada Dahdah de Surillo tenían conocimiento de tal hecho.

En específico, adujo que el 22 de septiembre de 2021, cuando se enteró de las permutas realizadas el 14 de agosto de 2020, le envió un correo electrónico a la licenciada Dahdah de Surillo y ésta le admitió que, en efecto, presentó los

---

[1] Ésta compareció en representación de su esposo, el señor Ponce Fantauzzi, -- hermano del licenciado Ponce Fantauzzi -- según consta en la Escritura Núm. 209 de *Poder Duradero*, otorgada en Mayagüez Puerto Rico, el 11 de diciembre de 2017 ante la notaria Dahdah de Surillo, debidamente inscrita en el Registro de Poderes y Testamentos de este Tribunal.

antes mencionados instrumentos públicos ante el Registro de la Propiedad, aunque ésta conocía que esta entidad no les daría entrada a sus registros, toda vez que en los mismos no se especificó la participación del licenciado Ponce Fantauzzi en los bienes permutados. Sostuvo, también, que la referida letrada reconoció que no contó con un estudio de título durante el otorgamiento.

Por último, el licenciado Ponce Fantauzzi arguyó que, oportunamente, la licenciada Dahdah de Surillo le informó que presentaría ante el Registro ciertas escrituras de rectificación para subsanar los errores que motivaron esta queja. Sin embargo, una vez revisados dichos instrumentos públicos, éste entendió que éstas no corregían los datos falsos contenidos en las escrituras de permuta, por lo que se negó a suscribirlos. A su vez, el licenciado Ponce Fantauzzi cuestionó el propósito de la referida letrada tras la autorización de tales escrituras públicas y su presentación en el Registro de la Propiedad.

Enterada de la queja en su contra, el 28 de noviembre de 2022 la licenciada Dahdah de Surillo compareció ante nos. Ésta expresó que, en efecto, al otorgar las Escrituras Núm. 50 y 51, de 14 de agosto de 2020, escrituras de permuta, conocía que el licenciado Ponce Fantauzzi era dueño del 50% de los inmuebles. Arguyó que, cometió un error no intencional y una omisión involuntaria al no especificar la participación del licenciado Ponce Fantauzzi en los bienes permutados.

No obstante, la licenciada Dahdah de Surillo sostuvo que intentó corregir dicho error mediante ciertas escrituras de rectificación. Sin embargo, como ya mencionamos, como el licenciado Ponce Fantauzzi se negó a firmar la ratificación de los negocios jurídicos en controversia, la referida letrada procedió a otorgar la Escritura Núm. 130 de 7 de octubre de 2021 para revocar las permutas y retirar del Registro de la Propiedad las escrituras públicas objeto del presente proceso disciplinario.

De otra parte, la licenciada Dahdah de Surillo reconoció que no tuvo ante sí un estudio de título cuando autorizó los instrumentos públicos aquí en controversia. Lo anterior, se debió a que todos los documentos relacionados con ello estaban en su oficina, a la cual no acudía por temor a ser contagiada con el COVID-19.

Por último, la licenciada Dahdah de Surillo aludió a su buen desempeño profesional a lo largo de su carrera y a que -- el incidente aquí en controversia -- se trató de una conducta aislada. Dicho ello, la referida letrada arguyó que ciertas circunstancias que como sociedad vivimos -- entiéndase, en este caso, la pandemia del COVID-19 -- pueden nublar el juicio correcto y aceptó no haber actuado con la debida diligencia.

Así pues, evaluados los planteamientos de ambas partes, el 24 de febrero de 2023 este Tribunal refirió este asunto a la Oficina de Inspección de Notarías (en adelante, "ODIN") para que realizara la correspondiente investigación y nos

sometiera el informe de rigor. En cumplimiento con lo anterior, el 18 de mayo de 2023 la ODIN nos presentó su *Informe.*

En el mencionado *Informe*, la referida dependencia de este Tribunal, a grandes rasgos, concluyó que los actos y omisiones consumadas por la mencionada letrada resultaron en detrimento de la profesión notarial. Concluyó lo anterior, pues la licenciada Dahdah de Surillo, al autorizar las Escrituras Núm. 50 y 51 de 14 de agosto de 2020, escrituras de permuta, dio fe de un hecho falso, al afirmar que la parte otorgante era dueña de la totalidad de las fincas allí descritas y que tenía autoridad legal para traspasar o enajenar su dominio a determinadas corporaciones, cuando ello no era cierto.

En esa línea, la ODIN indicó que, si bien la licenciada Dahdah de Surillo posteriormente intentó autorizar unos instrumentos públicos para tratar de subsanar el porciento atribuido a la participación de los comuneros en los bienes inmuebles objetos de las permutas, lo cierto es que las escrituras públicas objeto del presente proceso disciplinario consignan un hecho contrario a la realidad registral o extrarregistral. A juicio de la mencionada dependencia de este Tribunal, en su proceder, la referida letrada tomó livianamente su responsabilidad personal e indelegable como funcionaria del Estado y depositaria de la fe pública notarial.

Al tomar en consideración lo antes descrito,[2] la ODIN concluyó que la licenciada Dahdah de Surillo violó el Art. 2 de la Ley Notarial, *infra* y el Art. 131 de la Ley del Registro de la Propiedad, *infra*. Además, determinó que la referida letrada infringió los Cánones 18, 35 y 38 de Ética Profesional, *infra,* por lo cual nos recomendó ordenar su suspensión del ejercicio de la notaría por un término de tres (3) meses.

Oportunamente, la referida letrada presentó su *Réplica a informe de la Oficina de Inspección de Notarías.* En ésta, en esencia, arguyó que -- la conducta que da base a la queja que nos ocupa --, se trató de un incidente aislado, provocado por la situación de emergencia causada por la pandemia del COVID-19 y la situación crítica de salud en la cual se encontraba el señor Ponce Fantauzzi.

Examinado el cuadro fáctico que antecede, procedemos entonces a esbozar la normativa aplicable al proceso disciplinario ante nuestra consideración.

## II.

Como es sabido, en nuestra jurisdicción, la práctica de la notaría está regida tanto por lo contemplado en la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2001 *et seq.,* como por lo

---

[2] Valga señalar que, la ODIN -- al presentar su recomendación --, evaluó como atenuantes el hecho que la licenciada Dahdah de Surillo no ha estado sujeta a otros procedimientos disciplinarios en su desempeño notarial de más de 35 años, y que la referida letrada autorizó la Escritura Núm. 130 de 7 de octubre de 2021 para revocar las permutas y retiró del Registro las escrituras públicas presentadas previamente y relacionadas a los hechos ante nos.

dispuesto en el Código de Ética Profesional, 4 LPRA Ap. IX. Al ser ello así, los notarios y las notarias, -- en el desempeño de sus funciones --, deben observar ambos preceptos legales, pues, en numerosas ocasiones, este Tribunal ha señalado que el incumplimiento con las mencionadas normas puede acarrear la imposición de severas sanciones disciplinarias. *In re González Soto*, 2023 TSPR 29, 211 DPR __ (2023); *In re Alomar Santiago*, 2023 TSPR 16, 211 DPR __ (2023); *In re Charbonier Laureano*, 204 DPR 351, 360 (2020).

## A.

En esa dirección, y como punto de partida en nuestro análisis, es preciso señalar que el **Art. 2 de la Ley Notarial de Puerto Rico** establece que el notario o la notaria es aquel profesional del derecho "que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". 4 LPRA sec. 2002. Esta disposición consagra, pues, el principio de la fe pública notarial, espina dorsal de nuestro sistema notarial. *In re Maldonado De Jesús*, 208 DPR 601, 612 (2022); *In re Torres Rivera*, 204 DPR 1, 11 (2020); *In re Pagán Díaz*, 198 DPR 398, 404 (2017).

En lo pertinente al proceso disciplinario que nos ocupa, en innumerables ocasiones, hemos sentenciado que, el anterior principio se derrota cuando un notario o notaria certifica un hecho falso. *In re González Pérez, supra*; *In re Refols Van Derdys*, 2022 TSPR 152, 211 DPR __ (2022); *In re Villalona*

*Viera*, 206 DPR 360, 372 (2021). Y, certificar un hecho falso, por si solo pudiese acarrear la imposición de serias sanciones disciplinarias, como lo es la suspensión inmediata e indefinida de la práctica de la abogacía y de la notaría. *In re Norberto Colón Alvarado*, 2023 TSPR 98, 211 DPR __ (2023); *In re Villalona Viera, supra; Vázquez González,* 194 DPR 688, 694 (2016).

De igual forma, resulta menester señalar que, "[a]utorizar una escritura sin conocer sus antecedentes registrales, mediante la realización de un estudio de título, constituye una violación a la fe pública notarial". *In re Pagani Padró,* 198 DPR 812, 821 (2017). Véase, además, *In re Vargas Velázquez,* 193 DPR 681, 693 (2015); *In re Ayala Oquendo*, 185 DPR 572, 581 (2012).

B.

Establecido lo anteior, conviene recordar aquí que, en el Registro de la Propiedad, los Registradores y las Registradoras solo pueden inscribir documentos que sean válidos y perfectos. *Adorno v. Vigo,* 207 DPR 361, 370 (2021); *Gasolinas PR v. Registrador,* 155 DPR 652 (2001); *U.S.I. Properties, Inc. v. Registrador,* 124 DPR 448, 465 (1989). Véase, además, L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed., San Juan, Eds. Jurídica, 2012, pág. 275. En esa dirección, esta Curia ha sentenciado que son válidos y perfectos aquellos documentos que reúnen en sí los requisitos establecidos por ley o reglamento. *Western Fed. Savs. Bank v. Registrador,* 139 DPR

328, 332 (1995); *Mojica Sandoz v. Bayamón Federal Savs.,* 117 DPR 110 (1986); *Preciosas V. Del Lago v. Registrador*, 110 DPR 802 (1981).

En lo pertinente al asunto que nos ocupa, -- entiéndase, a lo relacionado a los bienes en comunidad -- precisa señalar que el **Art. 131 de la Ley del Registro de Propiedad Inmobiliaria**, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq.,* claramente dispone que "[s]ólo se podrán inscribir enajenaciones o gravámenes sobre cuotas específicas cuando éstas hayan sido previamente adjudicadas". Art. 131 de la Ley Núm. 210-2015, *supra*, sec. 6186. Igualmente, la referida disposición legal requiere que "la inscripción de participaciones específicas a favor de cada comunero se practi[que] en virtud de resolución judicial final y firme o escritura pública con la comparecencia y consentimiento de todos los herederos y legatarios si los hubiera, a la partición y adjudicación de todo o parte del caudal". *Íd.*

C.

Por otro lado, y al ser un extremo pertinente para la correcta disposición del proceso disciplinario que nos ocupa, es menester mencionar que el **Canon 18** del Código de Ética Profesional, 4 LPRA Ap. IX, C.18, le requiere a los y las profesionales del derecho el rendir -- en todo momento -- una labor caracterizada por el mayor grado de competencia y de diligencia. *In re Maldonado De Jesús, supra,* pág. 614; *In re García Cabrera*, 201 DPR 902, 925 (2019); *In re Portela Martínez*, 191 DR 84, 90 (2014). En ese sentido, el principio

antes reseñado, el cual, a todas luces, le aplica a los abogados y las abogadas en el desempeño de su función notarial, les requiere a éstos y éstas corroborar que los actos y negocios jurídicos que autoricen cumplan cabalmente con las normas legales aplicables. *In re García Cabrera, supra; In re Vargas Velázquez, supra,* págs. 690-691; *In re Toro González* II, 193 DPR 877, 890 (2015).

En consecuencia, un notario o notaria que viola las disposiciones de la Ley Notarial de Puerto Rico, *supra*, -- y su reglamento --, infringe, a su vez, el **Canon 18**. *In re Villalona Viera, supra; In re García Cabrera, supra; In re Ayala Oquendo, supra,* pág. 580.

D.

De otra parte, y por también ser de aplicación a los hechos ante nos, es menester examinar en esta ocasión lo dispuesto en el **Canon 35** del Código de Ética Profesional, 4 LPRA Ap. IX, C.35. Como es sabido, el referido Canon le impone a los abogados y a las abogadas el deber de conducirse con integridad, sinceridad y honradez ante los tribunales, para con sus representados y en las relaciones con sus compañeros y compañeras. *In re Joglar Castillo*, 210 DPR 956, 966 (2022); *Maldonado De Jesús, supra; In re Charbonier Laureano, supra*, pág. 364.

Para cumplir con lo dispuesto en el referido Canon, los abogados y las abogadas deben asegurarse que, -- en el desempeño de sus funciones --, no proveen información falsa o incompatible con la verdad y no oculten información cierta

que deba ser revelada. *In re Joglar Castillo, supra*, pág. 966; *In re Ortiz Sánchez*, 201 DPR 765, 781 (2019); *In re Astacio Caraballo,* 149 DPR 790, 798-799 (1999). Así pues, tienen una obligación ineludible de que los datos incluidos en cada documento que firman o redactan sean veraces. *In re Sánchez Pérez, supra,* pág. 264; *In re Pagán Díaz*, 198 DPR 398, 407 (2017); *In re Ramírez Salcedo*, 196 DPR 136 (2016). Ello es de aplicación, en toda su extensión, a la labor que realizan los notarios y las notarias. El no hacerlo, podría conllevar la imposición de serias sanciones disciplinarias. *In re López de Victoria Bras*, 177 DPR 888 (2010); *In re Astacio Caraballo, supra*, pág. 799; *In re Peña Clos,* 135 DPR 590, 602 (1994).

### E.

Por último, y por guardar estrecha relación con la queja disciplinaria que hoy evaluamos, conviene repasar aquí la conducta que regula el **Canon 38** del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38. Canon que, como sabemos, instituye el deber de todo abogado y toda abogada de exaltar el honor y la dignidad de la profesión legal, aunque al así hacerlo conlleve sacrificios personales y, además, el deber de éstos y éstas de evitar hasta la apariencia de conducta profesional impropia. 4 LPRA Ap. IX, C. 38. Véase, además, *In re González Pérez, supra*; *In re González Hernández*, 190 DPR 164, 183 (2014); *In re Ortiz Martínez*, 161 DPR 572, 588 (2004).

Sobre el particular, basta con señalar que los abogados y las abogadas son la imagen de la profesión legal y, por tal razón, siempre deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. *In re Vázquez Bernier*, 198 DPR 459 (2017); *In re Rivera Nazario*, 193 DPR 573 (2015); *In re Gordon Meléndez*, 183 DPR 628 (2011). En esa dirección, hemos señalado que "[n]o exalta la profesión legal el notario [o notaria] que no desempeñe con cautela y el celo que demanda la función pública del notariado". *In re Villalona Viera, supra,* pág. 375 citando a *In re Vázquez Margenat*, 204 DPR 968, 980 (2020).

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer del proceso disciplinario que nos ocupa.

### III.

Como mencionamos anteriormente, el presente proceso disciplinario fue referido ante la ODIN, quien tuvo la oportunidad de examinar cuidadosa y detenidamente la prueba presentada y de hacer sus correspondientes determinaciones de hechos y conclusiones de derecho. En su *Informe*, la ODIN concluyó que la licenciada Dahdah de Surillo infringió el Art. 2, de la Ley Notarial de Puerto Rico, *supra,* el Art. 131 de la Ley del Registro de Propiedad Inmobiliaria, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra.* Coincidimos.

Y es que, según ha quedado claramente demostrado, la licenciada Dahdah de Surillo, al momento de otorgar las

Escrituras Núm. 50 y 51 de 14 de agosto de 2021, escrituras de permutas, dio fe de un hecho falso. Esto, al afirmar que la parte otorgante de los aludidos instrumentos públicos era dueña de la totalidad de las fincas allí descritas y tenía capacidad legal para enajenar o traspasar su dominio a determinadas corporaciones, cuando esto no era cierto. Erró gravemente la referida letrada.

En relación con ello, las justificaciones dadas por la licenciada Dahdah de Surillo para actuar como actuó -- entre ellas, el miedo a un posible contagio como consecuencia de la pandemia del COVID-19 y cómo ello "nubló" el juicio correcto --, no nos convence. La licenciada Dahdah de Surillo debió ejercer un mayor grado de competencia y diligencia en su desempeño profesional.

Por otro lado, la referida letrada intentó justificar, sin más, su falta de precisión en las escrituras objeto del presente proceso disciplinario en que no tenía la documentación necesaria -- como lo es el estudio de título -- para otorgar correctamente las mismas, pues se encontraban en su oficina, a la cual no acudía por miedo a un contagio con el COVID-19.[3] Cabe señalar que la ausencia de un estudio de título previo a otorgar los referidos instrumentos públicos, -- lo cual provocó que la licenciada Dahdah de Surillo certificara hechos falsos --, es, por sí sola, una

---

[3] Valga señalar que la licenciada Dahdah de Surillo reconoció que su secretaria se encontraba en su oficina y no indicó que ésta tuviese impedimento alguno para asistirle. Igualmente, la mencionada letrada podía verificar las constancias del Registro a través de la plataforma Karibe, lo cual tampoco sucedió.

falta mayor, pues constituye una infracción a la fe pública notarial.

En fin, con su proceder, la licenciada Dahdah de Surillo actuó contrario al deber de lealtad que todo notario o notaria debe tener hacia la ley y la verdad, como a su deber de diligencia y honradez. No albergamos duda alguna que, con dicha conducta, infringió, pues, el Art. 2 de la Ley Notarial de Puerto Rico, *supra,* el Art. 131 de la Ley del Registro de Propiedad Inmobiliario, *supra,* y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra.*

IV.

Siendo ello así, y en virtud de nuestro poder inherente de reglamentar la profesión de la abogacía, suspendemos a la licenciada Dahdah de Surillo por un término de tres (3) meses del ejercicio de la notaría.

En consecuencia, se le ordena a la mencionada letrada notificar a todas las personas que habían procurado su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendientes y devolverles, tanto sus expedientes, como los honorarios notariales recibidos por trabajos no rendidos. Asimismo, se le impone la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes a quienes le notificó de dicha suspensión, dentro de un término de treinta (30) días contado a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia.* Además, se le apercibe que su incumplimiento con lo aquí ordenado podría conllevar que no

se le reinstale a la práctica de la profesión de la notaría, de solicitarlo en un futuro.

La fianza notarial de la licenciada Dahdah de Surillo queda automáticamente cancelada; ésta se considerará buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados por la referida letrada durante el periodo en que la misma estuvo vigente. Finalmente, el Alguacil de este Tribunal deberá incautar la obra y sello notarial de la licenciada Dahdah de Surillo y entregar los mismos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese por correo electrónico esta *Opinión Per Curiam y Sentencia* a la licenciada Dahdah de Surillo.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Laura A. Dahdah de Surillo       AB-2022-0221
    (TS-8,641)

SENTENCIA

En San Juan, Puerto Rico, a 12 de septiembre de 2023.

Por los fundamentos expuestos en la Opinion *Per Curiam* que antencede, la cual se hace formar parte de la presente Sentencia, suspendemos a la licenciada Dahdah de Surillo por un término de tres (3) meses del ejercicio de la notaría.

En consecuencia, se le ordena a la mencionada letrada notificar a todas las personas que habían procurado su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendientes y devolverles, tanto sus expedientes, como los honorarios notariales recibidos por trabajos no rendidos. Asimismo, se le impone la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes a quienes le notificó de dicha suspensión, dentro de un término de treinta (30) días contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. Además, se le apercibe que su incumplimiento con lo aquí ordenado podría conllevar que no se le reinstale a la práctica de la profesión de la notaría, de solicitarlo en un futuro.

La fianza notarial de la licenciada Dahdah de Surillo queda automáticamente cancelada; ésta se considerará buena y válida por tres (3) años después

de su terminación en cuanto a los actos realizados por la referida letrada durante el periodo en que la misma estuvo vigente.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y sello notarial de la licenciada Dahdah de Surillo y entregar los mismos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese por correo electrónico esta Opinión *Per Curiam* y Sentencia a la licenciada Dahdah de Surillo.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                    Javier O. Sepúlveda Rodríguez
                                    Secretario del Tribunal Supremo