EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Miguel A. Sánchez Pérez<br>(TS-5,362) | 2022 TSPR 98<br><br>209 DPR ____ |

Número del Caso: CP-2016-4

Fecha: 19 de julio de 2022

Oficina del Procurador General:

     Lcda. Karla Z. Pacheco Álvarez
     Subprocuradora General

     Lcdo. Joseph G. Feldstein Del Valle
     Subprocurador General

     Lcda. Lorena Cortes Rivera
     Subprocuradora General

     Lcdo. Pedro A. Vázquez Montijo
     Subprocurador General

     Lcda. Minnie H. Rodríguez López
     Procuradora General Auxiliar

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar

     Lcda. Noemí Rivera De León
     Procuradora General Auxiliar

Abogado del querellado:

     Lcdo. Francisco Sánchez Rodríguez

Comisionada Especial:

     Hon. Enid Martínez Moya

Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía por violar la fe pública notarial y violación a los Cánones 9, 12, 18, 19, 35 y 38 del Código de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Miguel A. Sánchez Pérez       CP-2016-4       Conducta
      (TS-5362)                             Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 19 de julio de 2022.

En esta ocasión nos corresponde ejercer por **tercera vez** nuestro poder disciplinario en contra del Lcdo. Miguel A. Sánchez Pérez (licenciado Sánchez Pérez, querellado o letrado) por violar la fe pública notarial y distanciarse de los Cánones 9, 12, 18, 19, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, al: (1) desatender las órdenes de este Foro y de la Comisionada Especial durante la tramitación del proceso disciplinario en claro menosprecio de los postulados éticos que rigen la profesión legal; (2) demorarse injustificadamente casi cinco (5) años en presentar ante el Registro de la Propiedad una escritura de cancelación de pagaré

hipotecario; (3) no atender los requerimientos ni mantener informado a su cliente sobre el estado de la encomienda que le fue delegada, e (4) incumplir con el deber que tiene todo abogado de conducirse de manera tal que exalte el honor y la dignidad de la profesión legal.  Por estas razones, **adelantamos que suspendemos al licenciado Sánchez Pérez de manera inmediata e indefinida del ejercicio de la profesión legal. Veamos.**

I

A. Breve recuento del historial disciplinario del licenciado Sánchez Pérez

El licenciado Sánchez Pérez fue admitido al ejercicio de la abogacía el 29 de diciembre de 1976 y a la práctica del notariado el 17 de enero de 1977.  De un examen de su historial profesional se desprende que en dos (2) ocasiones previas lo hemos suspendido por incumplir con sus deberes y responsabilidades como notario. Específicamente, en *In re* Sánchez Pérez, 126 DPR 476 (1990), **suspendimos al letrado del ejercicio de la notaría por el término de tres (3) meses por una serie de deficiencias en su protocolo del año 1988 que consistían principalmente en no haber adherido y cancelado los sellos de rentas internas y el impuesto notarial en los instrumentos públicos autorizados, así como por desatender**

**los requerimientos de la Oficina de Inspección de Notarías**

**(ODIN) oportunamente.**[1] Íd., pág. 477.

Unos años más tarde, el 10 de febrero de 2010, el Colegio de Abogados de Puerto Rico presentó ante este Tribunal una *Moción Informativa* en la que nos solicitó la cancelación de la fianza notarial prestada por el licenciado Sánchez Pérez debido a que la misma estaba vencida por falta de pago. Véase *In re* Sánchez Pérez, 179 DPR Ap. (2010). Así las cosas, mediante *Resolución* del 8 de marzo de 2010, le concedimos al querellado un término de veinte (20) días para que mostrara causa por la cual no debíamos suspenderlo de la práctica de la notaría. **Vencido el término concedido sin la comparecencia del licenciado Sánchez Pérez, el 4 de junio de 2010 lo suspendimos inmediata e indefinidamente del ejercicio de la notaría.** Íd.

Mediante *Resolución* a esos efectos, el 14 de junio de 2010 ordenamos la incautación de la obra y el sello notarial del letrado. En reacción a ello, el 16 de junio de 2010 el licenciado Sánchez Pérez presentó una *Solicitud de Reconsideración* en la que: (1) se excusó por no haber satisfecho el pago para renovar su fianza notarial, -omisión que adjudicó a una alegada confusión provocada

---

[1] Cabe señalar que previo a que suspendiéramos al Lcdo. Miguel A. Sánchez Pérez (licenciado Sánchez Pérez o querellado) del ejercicio de la notaría en el 1990, éste compareció ante este Tribunal por medio de una *Moción Explicativa* en la que, además de notificar la corrección de las deficiencias notariales señaladas por el entonces Director de la Oficina de Inspección de Notarías (ODIN), el Lcdo. Govén D. Martínez Surís, atribuyó el incumplimiento de su obligación de adherir y cancelar los sellos de rentas internas y notariales a "problemas personales", sin explicar en qué consistían estos. Adujo, además, que su omisión no fue intencional **y nos aseguró que en el futuro no volvería a incurrir en deficiencias similares.**

por la eliminación de la colegiación compulsoria de los abogados en el 2010-; (2) nos informó que había efectuado el pago de la fianza notarial adeudada, y (3) nos solicitó que dejáramos sin efecto su suspensión y ordenáramos la devolución de su obra notarial.

A tono con lo anterior, le concedimos a la entonces Directora de la ODIN, la Lcda. Lourdes I. Quintana Lloréns (licenciada Quintana Lloréns), el término de veinte (20) días para que se expresara en torno a la solicitud de reinstalación del licenciado Sánchez Pérez. En cumplimiento con lo ordenado, la licenciada Quintana Lloréns nos indicó que la obra notarial del letrado consistía de protocolos formados para los años naturales 1977 al 2010, y de ocho (8) libros de registro de testimonios. De éstos, los protocolos de los años 1977 al 1998 y los primeros siete (7) tomos de su registro de testimonios habían sido inspeccionados, aprobados, entregados y depositados en el Archivo General de Protocolos del Distrito Notarial de Caguas (Archivo Notarial de Caguas). En cuanto a la obra notarial en proceso de inspección, nos indicó que los protocolos correspondientes a los años 1999, 2004, 2005, 2006, 2007, 2008 y 2009 no estaban encuadernados y que, de los instrumentos públicos examinados hasta ese momento, se adeudaban múltiples aranceles de rentas internas y de impuesto notarial. Debido a la seriedad de las faltas identificadas, la ODIN se opuso a la reinstalación del

licenciado Sánchez Pérez al ejercicio de la notaría. Contando con la posición de las partes, el 22 de junio de 2010, declaramos *no ha lugar* la solicitud de reconsideración presentada por el letrado.

El 14 de junio de 2018, el Lcdo. Manuel E. Ávila De Jesús (licenciado Ávila De Jesús o Director de la ODIN) presentó ante este Tribunal un *Informe sobre el estado de la obra notarial incautada y en solicitud de orden*. En síntesis, expuso que, a pesar de que el licenciado Sánchez Pérez había encuadernado su obra notarial y que los protocolos de los años 1999 al 2004 habían sido aprobados por la ODIN, aún subsistía una deficiencia arancelaria en los protocolos del 2005 al 2010 que ascendía a $7,946.00. Al mismo tiempo, nos informó que, en el libro de registro de testimonios pendiente por aprobar, no se habían cancelado los sellos a favor de la Sociedad para la Asistencia Legal en 1,174 asientos, lo que totalizaba $3,522.00. En fin, la deficiencia arancelaria adeudada por el querellado al 2018 era $11,468.00.

Informados sobre el estado de la obra notarial del letrado, emitimos una *Resolución* concediéndole un término de cuarenta y cinco (45) días para subsanar las deficiencias señaladas por la ODIN, particularmente la deuda arancelaria. Una vez vencido el término para que el licenciado Sánchez Pérez cumpliera con nuestra *Orden*, el Director de la ODIN nos informó que la deficiencia arancelaria subsistía y se redujo a $10,573.50. Así las

cosas, le concedimos al licenciado Sánchez Pérez un término final e improrrogable de veinte (20) días y le apercibimos que de incumplir con lo ordenado sería referido al Tribunal de Primera Instancia para el correspondiente procedimiento de desacato. Vencido nuevamente el término concedido, el licenciado Ávila De Jesús nos presentó una *Moción notificando cumplimiento parcial de orden y recomendando un término final e improrrogable* para informarnos los esfuerzos realizados por el querellado con el fin de reducir la deuda arancelaria a $7,987.50, lo que resultó en la aprobación de los protocolos formados para los años naturales 2006, 2008, 2009 y 2010. Asimismo, expuso que el letrado se había comprometido a satisfacer la suma de $994.50 en o antes del 27 de septiembre de 2018 para cancelar la deficiencia arancelaria en los instrumentos públicos del año 2007. Con respecto al protocolo del 2005 y al libro de registro de testimonios, el licenciado Sánchez Pérez acordó adherir y cancelar los sellos arancelarios al descubierto, con el producto de la venta de un bien inmueble de su pertenencia. Finalmente, el Director de la ODIN nos instó a concederle al letrado un término adicional final e improrrogable de veinte (20) días para culminar el proceso de subsanación de su obra notarial. En consecuencia, acogimos la recomendación de la ODIN y emitimos una *Resolución* a esos fines.

Previo al vencimiento de la prórroga concedida, el licenciado Sánchez Pérez presentó un *Escrito al Expediente* mediante el cual nos planteó que se aprestaba a cumplir con su compromiso de entregar los aranceles del protocolo del año 2007. Sin embargo, nos adelantó que, debido a una situación económica precaria, precisaba que le concediéramos un término adicional de sesenta (60) días para corregir las deficiencias arancelarias señaladas en el protocolo del 2005 y el libro de registro de testimonios. **Contando con la posición del Director de la ODIN, le concedimos al querellado un plazo final e improrrogable por el término solicitado, el cual incumplió.** Ante este panorama, emitimos una *Resolución* el 31 de mayo de 2019 en la que ordenamos al foro de instancia comenzar el proceso de desacato por el incumplimiento del letrado con las órdenes de este Tribunal. Asimismo, referimos el asunto al Departamento de Justicia por razón de la deuda arancelaria de $6,993.00.

A tono con lo anterior, y luego de varios trámites procesales, la vista de desacato quedó señalada para el 18 de septiembre de 2020. Llegada esa fecha, los representantes legales de la ODIN y del Ministerio Público informaron al foro de instancia que el letrado había pagado la deuda arancelaria y su obra notarial había sido aprobada. En vista de lo anterior, y a solicitud de

parte, el tribunal de instancia ordenó el archivo del caso.

Contando con la comparecencia de la ODIN,[2] emitimos una *Resolución* en la que hicimos constar que la obra notarial de licenciado Sánchez Pérez había sido inspeccionada, corregida, aprobada y entregada en el Archivo Notarial de Caguas. Así, dimos por terminada la fianza otorgada por el Colegio de Abogados de Puerto Rico en el año 1977 para garantizar las funciones notariales del letrado.

B. Trasfondo fáctico y procesal de la Queja AB-2011-0031

1. Alegaciones del Promovente

El 4 de febrero de 2011, el Sr. Ernesto Rivera González (señor Rivera González o promovente) presentó ante este Foro una queja juramentada contra el licenciado Sánchez Pérez. En síntesis, expuso que -producto del saldo de la hipoteca de su casa- el 18 de septiembre de 2006 le entregó al querellado varios documentos,[3] entre los que se encontraban el pagaré hipotecario original de su propiedad inmueble y un cheque por la cantidad de $1,000.00 para cubrir los honorarios de preparación y presentación de la escritura de cancelación de hipoteca en el Registro de la Propiedad. Señaló que, a pesar de que realizó múltiples gestiones para conocer el estado del

---

[2]   Mediante moción al respecto, la ODIN nos informó que en el futuro no recomendaría favorablemente cualquier petición suscrita por el licenciado Sánchez Pérez para solicitar [re]admisión al ejercicio de la notaría.

[3]   Copia de la Escritura Núm. 142 sobre Primera Hipoteca (Escritura de Primera Hipoteca) otorgada ante el notario público Efraín Feliciano González el 5 de junio de 1975 en San Juan, Puerto Rico y carta de cancelación de hipoteca emitida por el Banco Popular de Puerto Rico.

trabajo encomendado al letrado, **éste último se valía de las mismas excusas para justificar su tardanza.**[4] No fue hasta **septiembre de 2010** que el querellado le entregó al señor Rivera González una copia certificada de la Escritura Núm. 43 sobre Cancelación de Hipoteca (Escritura Núm. 43 o Escritura) **con fecha de otorgamiento del 18 de septiembre de 2006.**

El promovente, al referirse en la queja a la Escritura Número 43, puntualizó que nunca la había visto, firmado e iniciado. Asimismo, expresó que dicho instrumento público contenía defectos relacionados a su estado civil, pues en éste se hizo constar que era soltero cuando en realidad estaba casado con la Sra. Edna Myrian Cruz López desde el 1991.[5] Por otro lado, el señor Rivera González señaló que, en el acápite de aceptación y advertencias de la Escritura, el letrado consignó que éste había renunciado a su derecho de leer el instrumento público, hecho que -según él- era falso. En cuanto a la firma contenida en la Escritura señaló lo siguiente:

> **[T]iene mi firma que debe haber sido copiada de la [e]scritura original** porque yo nunca vi el documento hasta que el [licenciado Sánchez Pérez] me lo entregó en un sobre frente a mi suegro en su oficina. **Esta escritura nueva yo nunca la**

---

[4]    En su queja, el Sr. Ernesto Rivera González (señor Rivera González o promovente) adujo que el licenciado Sánchez Pérez se excusaba al indicarle que estaba enfermo, que su señora madre estaba indispuesta de salud y que él debía cuidarla o que se encontraba fuera del País. Expresó, además, que el letrado evadía sus llamadas telefónicas constantemente, así como las cartas en las que le requería solucionar el asunto.

[5]    Según el señor Rivera González, esta información era de conocimiento del licenciado Sánchez Pérez, pues ambos, junto a sus respectivas esposas, solían compartir socialmente.

**firmé. Las iniciales son copiadas de la [e]scritura original.** (Énfasis suplido).

Mediante la aludida queja, el señor Rivera González también planteó que, según el contenido de la Escritura Núm. 43, el **pagaré hipotecario había sido cancelado el 18 de septiembre del 2006,[6] por lo que en enero de 2011 acudió al Registro de la Propiedad para conocer el estatus de la cancelación de dicho gravamen y constató que la Escritura estaba pendiente [de ser registrada].[7]** (Énfasis suplido).

Conforme a las alegaciones de la queja, el promovente expuso que era una persona mayor de edad, con condiciones médicas progresivas y que había confiado plenamente en el licenciado Sánchez Pérez, pues habían sido compañeros militares y amigos por muchos años. Concluyó su reclamación expresando lo siguiente:

> Lo que yo quiero es que el [licenciado] Sánchez [Pérez] me devuelva mis [e]scrituras, la carta de cancelación del Banco Popular y los $1,000.00 que le pagué por adelantado por un trabajo que no hizo. **Le he pedido muchas veces que me devuelva [los] documentos y no ha podido producirlos, ni tan siquiera ha podido procesar la cancelación.** (Énfasis y subrayado nuestro).

---

**6** De la faz de la Escritura Núm. 43 sobre Cancelación de Hipoteca (Escritura Núm. 43 o Escritura), se desprende que el licenciado Sánchez Pérez hizo constar en la cláusula Quinta lo siguiente:

> El compareciente me entrega a mí, el Notario, dicho pagaré para que lo cancele, y Yo, el Notario, luego de examinarlo y de identificarlo, me cercioro que es el mismo que fue originalmente emitido y de que fue endosado a favor del compareciente para el propósito de su cancelación únicamente. **Yo, el Notario, lo inutilizo, lo taladro, estampo en su faz la palabra "CANCELADO" y luego escribo, en su faz también, la fecha de hoy, [18 de septiembre de 2006]. Así inutilizado, adhiero y uno a dicho pagaré al original de esta escritura de cancelación y lo hago formar parte de la misma, de todo lo cual DOY FE.**

**7** El promovente expresó en la queja presentada contra el querellado que fue al Registro de la Propiedad y la hipoteca no estaba cancelada.

Así las cosas, el 15 de febrero de 2011, la Subsecretaria de este Tribunal en ese momento le cursó al licenciado Sánchez Pérez una misiva en la que acompañó la queja presentada en su contra y le requirió expresarse al respecto dentro del término de diez (10) días, a partir del recibo de la comunicación. El 7 de marzo de 2011, el querellado solicitó una prórroga de quince (15) días para contestar las alegaciones en su contra. Luego de evaluada su petición, el 14 de marzo de 2011 se le concedió el término adicional solicitado para contestar la queja.

2. Contestación a la Queja y Réplica

El 13 de abril de 2011, el licenciado Sánchez Pérez compareció mediante escrito titulado *Contestación* en el que señaló que: (1) la Escritura Número 43 fue presentada en el Registro de la Propiedad de San Juan, Sección 5, **el 24 de marzo de 2011;**[8] (2) el señor Rivera González fue identificado mediante conocimiento personal, por sus dichos y por la información que surgía de la Escritura Núm. 142 sobre Primera Hipoteca (Escritura de Primera Hipoteca) otorgada en el 1975; (3) se encontraba tramitando un acta aclaratoria para corregir el estado civil del promovente, y (4) la solicitud para devolver los honorarios de abogado era irrazonable, pues con el dinero percibido rindió servicios profesionales relacionados con la Escritura Núm. 43, entre otros.

---

**8**    Esto es, en fecha posterior a que la queja fuera presentada por el señor Rivera González.

Así, el 20 de abril de 2011, el señor Rivera González presentó una carta de réplica en la que expresó que el error cometido por el licenciado Sánchez Pérez en torno a su estado civil no tenía su origen en la Escritura de Primera Hipoteca, pues en ella se hacía constar que su estado civil era casado y no soltero. También informó que la Escritura Número 43 fue presentada en el Registro de la Propiedad, pero que su inscripción tardaría de tres (3) a cuatro (4) meses. Finalmente, añadió lo siguiente:

> Acepto que no me devuelva los $1,000.00 porque, aunque tarde, después de tantos problemas el asunto de la cancelación de la [h]ipoteca aparentemente está por resolverse. Yo le pido a esta [C]orte que esa [e]scritura de cancelación de hipoteca sea enmendada para leer correctamente. **Yo creo que esa [e]scritura de cancelación debe ser leída ante mí y como [e]scritura nueva yo debo firmarla.** (Énfasis nuestro).

Contando con la comparecencia de las partes, el 20 de abril de 2011, referimos al Procurador General de Puerto Rico (Procurador General) copia del expediente de la queja para la investigación e informe correspondiente. Asimismo, el 21 de septiembre de 2011, emitimos una *Resolución* para concederle al Procurador General un término de treinta (30) días para presentar el informe final del caso.

3. Informes del Procurador General

Recibido el expediente de la Queja AB-2011-31 en la Oficina del Procurador General, comenzó el proceso de investigación. De ahí que, el 3 de junio de 2011 se le requirió al licenciado Sánchez Pérez que acreditara el

otorgamiento y la presentación en el Registro de la Propiedad del acta aclaratoria en la que se haría constar que el promovente se encontraba casado al momento del otorgamiento de la Escritura Núm. 43. De este modo, el 22 de junio de 2011 el letrado notificó la subsanación del estado civil del señor Rivera González al presentar una copia simple de la Escritura Número 18 sobre Acta Aclaratoria, otorgada el 21 de junio de 2011, ante el notario público Manuel Díaz Morales. Además, señaló que una vez adviniera en conocimiento de su presentación en el Registro de la Propiedad, entonces lo informaría oportunamente.

El 13 de febrero de 2012, el Procurador General presentó un *Informe Preliminar* en el que -en síntesis- determinó que: (1) de las comparecencias del licenciado Sánchez Pérez no se desprende que éste haya impugnado la fecha de contratación de sus servicios profesionales, el pago recibido o la documentación entregada; (2) no fue hasta el 24 de marzo de 2011 que el querellado presentó en el Registro de la Propiedad la Escritura Núm. 43 para inscripción; (3) la tardanza del letrado de casi cinco (5) años demuestra sin lugar a dudas su falta de diligencia en atender el asunto encomendado, en contravención al Canon 18 del Código de Ética Profesional, *supra*; (4) el hecho de que la Escritura Núm. 43 fue presentada para inscripción luego de que el promovente presentó la queja denota conducta impropia o apariencia de ésta, según dispuesto

por el Canon 38 del Código de Ética Profesional, *supra*; (5) al no presentar el acta aclaratoria como documento complementario de la Escritura Núm. 43, el instrumento público pendiente de inscripción contiene datos incorrectos -como el estado civil del promovente- que no se ajustan a la realidad de los hechos, por lo que es un documento que no es fiel y exacto en su contenido,[9] y (6) el letrado violó el Canon 19 del Código de Ética Profesional, *supra,* al no mantener informado al señor Rivera González sobre el estatus de la labor encomendada y por la tardanza de casi cinco (5) años en presentar la Escritura Núm. 43 en el Registro de la Propiedad.

En fin, el Procurador General concluyó que existía prueba para demostrar que el licenciado Sánchez Pérez violó los Cánones 18, 19, 35 y 38 del Código de Ética Profesional, *supra*, así como la fe pública notarial. Con respecto a las imputaciones relacionadas con la falsificación de firma e iniciales del promovente en la Escritura Núm. 43, el Procurador General decidió no emitir comentarios en ese momento debido a que no contaba con todos los elementos de juicio para emitir una opinión. Así las cosas, nos solicitó que emitiéramos una orden dirigida a la ODIN para incautar el tomo del año 2006 de la obra notarial del querellado y así evaluar el documento

---

[9]   Esto, en contravención al Canon 35 del Código de Ética Profesional, *supra*, pues el licenciado Sánchez Pérez, bajo su fe pública notarial, hizo constar un hecho falso al no realizar las indagaciones necesarias sobre las circunstancias personales del señor Rivera González al momento de otorgar la escritura de cancelación de hipoteca.

original en controversia y expresarse al respecto. Así las cosas, emitimos una *Resolución* el 27 de abril de 2012,[10] en la que ordenamos la incautación solicitada.[11]

El 22 de mayo de 2012, el señor Rivera González presentó ante este Tribunal una carta en la que reafirmó no haber firmado e iniciado la Escritura Núm. 43. Como parte de su relato, también manifestó que el letrado copió su firma e iniciales de la escritura original y que no era posible que las iniciales de su difunta esposa, la Sra. Smyrna García Soler, aparecieran en el instrumento público, pues ésta había fallecido en el 1991.

En vista de que la ODIN custodiaba la obra notarial del licenciado Sánchez Pérez, emitimos una *Resolución* el 30 de noviembre de 2012 en la que ordenamos al Procurador General coordinar con dicha dependencia para la inspección del protocolo del año 2006 y así pudiera completar su evaluación e informe final. El 25 de septiembre de 2015, el Procurador General presentó su informe final. En esencia, destacó que copia de la Escritura Núm. 43, así como su versión original, fueron remitidas al Laboratorio de Criminalística, Sección de Poligrafía y Documentos Dudosos del Instituto de Ciencias Forenses (Instituto de Ciencias Forenses) para análisis e informe sobre la presunta falsificación de firma e iniciales del señor

---

[10]   Notificada el 8 de mayo de 2012.

[11]   Conviene enfatizar que el 14 de junio de 2010 se incautó la obra notarial del licenciado Sánchez Pérez por razón de su suspensión indefinida del ejercicio de la notaría.

Rivera González. Además, nos informó que, analizadas las muestras de escritura del promovente, así como los documentos con su firma original, el Instituto de Ciencias Forenses concluyó que el señor Rivera González no era el autor de la firma contenida en la Escritura Núm. 43.[12] De esta manera, el Procurador General dispuso que el promovente no había firmado e iniciado la Escritura Núm. 43, por lo que se sostuvo en sus conclusiones preliminares respecto a los cánones del Código de Ética Profesional, *supra,* infringidos por el licenciado Sánchez Pérez.

Como resultado de lo antes expuesto, el 13 de octubre de 2015 emitimos una *Resolución* en la que le concedimos al querellado un término de veinte (20) días para expresarse sobre el informe final del Procurador General. Acorde con ello, el 14 de octubre de 2015 el licenciado Sánchez Pérez presentó un escrito titulado *R[é]plica al informe final de la Procuradora General*, en el que, en lo pertinente, expuso que existían dos (2) hechos falsos en el informe final, de los cuales éste no había podido defenderse. Manifestó que, a diferencia de lo señalado por el Procurador General, éste presentó en el Registro de la Propiedad un acta aclaratoria para subsanar el error en las circunstancias personales del señor Rivera González, razón por la cual se le debió haber permitido ofrecer

---

[12] Según el Procurador General, surge de los informes confidenciales rendidos por el Instituto de Ciencias Forenses que la firma del señor Rivera González contenida en la Escritura Núm. 43 fue realizada utilizando una firma modelo.

prueba para demostrar que llevó a cabo la gestión oportunamente. En cuanto al segundo hecho falso, el licenciado Sánchez Pérez expresó que las conclusiones del informe generado por el Instituto de Ciencias Forenses -del cual no recibió copia- eran incorrectas debido a que la firma e iniciales que constaban en la Escritura Núm. 43 eran las del señor Rivera González. Planteó, además, que el Procurador General no le concedió la oportunidad de confrontar la prueba ni de contratar un perito calígrafo que realizara un análisis independiente para impugnar el informe del Instituto de Ciencias Forenses, en contravención a las garantías del debido proceso de ley.

Examinado el informe final rendido por el Procurador General, le ordenamos presentar la querella correspondiente en contra del licenciado Sánchez Pérez. Así las cosas, el 29 de junio de 2016 el Procurador General cumplió con lo ordenado por este Tribunal y presentó la querella, en la que se le atribuyó al letrado violar los Cánones 18, 19, 35 y 38 del Código de Ética Profesional, *supra*, mientras realizaba funciones como notario. Específicamente, se le imputó al licenciado Sánchez Pérez desplegar una conducta profesional contraria a los postulados éticos que rigen la profesión legal al: (1) no realizar de manera capaz y diligente la gestión de presentar la Escritura Núm. 43 ante el Registro de la Propiedad, para lo cual tardó más de cuatro (4) años **(Cargo I)**; (2) no mantener informado al señor Rivera

González sobre el estado de la gestión encomendada **(Cargo II)**; (3) hacer constar hechos contrarios a la realidad en la Escritura Núm. 43, lesionando así la confianza y la fe pública notarial depositada en él **(Cargos III y IV)**, y (4) no ser cuidadoso y diligente en la gestión para presentar la Escritura Núm. 43, por no mantener informado al promovente, por haber consignado datos incorrectos en el instrumento público autorizado, así como por el hecho de que el señor Rivera González no fue quien plasmó su firma en la Escritura Núm. 43 **(Cargo V)**.

El 1 de julio de 2016, el licenciado Sánchez Pérez fue notificado personalmente de la querella presentada en su contra mediante *Mandamiento para contestar querella sobre conducta profesional*, expedido el 26 de junio de 2016. Por virtud de éste, se le ordenó al letrado presentar su contestación a la querella en el término de quince (15) días. No obstante, el 18 de julio de 2016, el querellado nos solicitó una prórroga de treinta (30) días para contestar. Así las cosas, mediante *Resolución* del 10 de agosto de 2016, concedimos su solicitud y le apercibimos que, de no contestar, los procedimientos del caso continuarían sin su comparecencia. **Una vez vencida la prórroga para contestar la querella, el licenciado Sánchez Pérez no compareció para presentar sus planteamientos.**

4. Proceso disciplinario ante la Comisionada Especial

El 21 de junio de 2017, designamos a la Lcda. Enid Martínez Moya (licenciada Martínez Moya o Comisionada Especial) como Comisionada Especial para atender los procedimientos de la querella que nos ocupa. **Así las cosas, el 23 de agosto de 2017 se celebró la vista inicial sin la comparecencia del querellado o de su representante legal.**[13] Por su parte, la Oficina del Procurador General estuvo representada por la Lcda. Minnie H. Rodríguez López (licenciada Rodríguez López o Procuradora Auxiliar). **Debido a que el licenciado Sánchez Pérez no compareció a la vista inicial, la Procuradora Auxiliar solicitó que se le anotara la rebeldía.** En consecuencia, la Comisionada Especial señaló la celebración de una vista en rebeldía para el 14 de noviembre de 2017. Sin embargo, ante el infortunado embate del huracán María y de los daños colaterales que dejó el paso de este fenómeno atmosférico por el país, la celebración de dicha vista quedó suspendida.

Luego de otras incidencias procesales, el 6 de diciembre de 2017 la Comisionada Especial ordenó un nuevo señalamiento para el 13 de febrero de 2018.[14] Llegada esa fecha, comparecieron a la vista el querellado por derecho propio y la Procuradora Auxiliar. A preguntas de la

---

[13] Además de que el licenciado Sánchez Pérez no se excusó, tampoco contestó la querella en su contra, según se lo requerimos el 10 de agosto de 2016, o sea, pasado más de un (1) año desde que le concedimos la prórroga para contestar y se realizó la vista inicial.

[14] Tanto la minuta de la vista inicial como las órdenes de recalendarización de vistas fueron notificadas al licenciado Sánchez Pérez. No empece a ello, el letrado decidió no expresarse al respecto.

Comisionada Especial, el licenciado Sánchez Pérez expresó haber recibido copia de la *Resolución* en la que le concedimos un término adicional para contestar la querella; contrario a las demás notificaciones, las cuales alegó no haber recibido. Luego de solicitar autorización para expresarse en torno a las razones que provocaron su incomparecencia ante este Foro, el querellado expuso ciertas situaciones personales que lo habían afectado. Toda vez que el licenciado Sánchez Pérez no contaba con representación legal y según surge de la propia minuta, su estado emocional en ese momento no era el más apropiado, la Comisionada Especial le aclaró que no consideraría ningún comentario o admisión realizado durante la vista.

Por su parte, la licenciada Rodríguez López planteó su intención de enmendar la querella en contra del letrado, oportunidad que le permitiría a este último presentar su contestación a la misma. En cuanto a la anotación de la rebeldía, la Comisionada Especial expresó que el curso de acción en el caso dependería de la determinación de este Tribunal al evaluar la solicitud del Procurador General para enmendar la querella.

El 16 de marzo de 2018, luego de examinar los planteamientos del Procurador General, autorizamos la solicitud de enmienda a la querella, la cual fue presentada el 11 de mayo de 2018. Esencialmente, en la querella enmendada por el Procurador General, además de los cargos inicialmente formulados, se le imputó al

licenciado Sánchez Pérez haber violado los Cánones 9, 12 y 38 del Código de Ética Profesional, *supra* **(Cargos VI, VII y VIII, respectivamente).** En síntesis, los nuevos cargos presentados le atribuyeron al letrado: (1) haber desatendido las órdenes de este Foro para que contestara la querella presentada en su contra; (2) ausentarse a la vista inicial celebrada el 23 de agosto de 2017 ante la Comisionada Especial sin excusar su comparecencia; (3) ocasionar dilaciones innecesarias en la tramitación del caso, y (4) desplegar un comportamiento impropio durante el trámite de la querella, que en nada exalta el honor y la dignidad de la profesión legal.

Luego de varios trámites procesales, el licenciado Sánchez Pérez, por derecho propio, presentó la contestación a la querella enmendada **fuera del término reglamentario de quince (15) días y sin haber solicitado prórroga alguna.**[15] En su escrito, adujo el querellado -entre otros particulares- que aceptaba su responsabilidad por no haber presentado oportunamente la Escritura Núm. 43 en el Registro de la Propiedad y por no haber realizado las indagaciones suficientes sobre el estado civil del señor Rivera González. Con respecto a las imputaciones sobre la falsificación de firma e iniciales en el instrumento público otorgado por el promovente, el letrado

---

**15** El *Mandamiento* para contestar la querella enmendada fue expedido el 14 de mayo de 2018 y diligenciado el 31 de mayo de 2018. Sin embargo, a pesar de que se le concedió al letrado quince (15) días para expresarse, presentó su contestación a la querella el 16 de julio de 2018, es decir, **veinticinco (25) días luego de vencido el término.**

negó de plano dichas alegaciones y solicitó que se le permitiera contratar los servicios de un perito calígrafo para probar su defensa. Aun cuando el licenciado Sánchez Pérez contestó la querella enmendada, no se expresó en torno a los nuevos cargos presentados por el Procurador General.

Pese a todo lo anterior, el 14 de agosto de 2018 la Comisionada Especial, **previo acuerdo entre las partes**, señaló una vista sobre el estado de los procedimientos para el 19 de septiembre de 2018. Según surge del expediente del caso, dicho señalamiento de vista fue debidamente notificado a las partes a sus respectivas direcciones de correo electrónico. **Sin embargo, llegada la fecha de la vista, el letrado no compareció ni se excusó de la misma.** En vista de ello, la Comisionada Especial hizo constar para récord que el querellado había demostrado una absoluta desatención al proceso disciplinario en su contra y a las diferentes órdenes emitidas por ella y por este Tribunal.

Durante la vista, el Procurador General expresó su preocupación sobre el comportamiento del letrado y solicitó que la vista final del caso quedara señalada para diciembre de 2018. Planteó que el señor Rivera González, quien comparecería como testigo, era mayor de edad, residía en Estados Unidos y su condición de salud era delicada. Por su parte, la Comisionada Especial le concedió al licenciado Sánchez Pérez un término de cinco

(5) días para que mostrara causa por la que no debía señalar una vista en rebeldía y continuar el procedimiento disciplinario sin su participación.

Así las cosas, la Comisionada Especial instruyó a la secretaria de sala a comunicarse con el letrado para informarle que recibiría copia de la minuta de la vista celebrada el 19 de septiembre de 2018. Finalmente, el 24 de septiembre de 2018, la funcionaria del Tribunal logró dialogar con el querellado. Durante la conversación, el licenciado Sánchez Pérez se excusó por su incomparecencia a la vista y expresó que el 15 de septiembre de 2018 tuvo que realizar un viaje a Estados Unidos por motivos de una condición de salud de su hijo. Indicó, además, que había regresado a la Isla el 23 de septiembre de 2018, por lo que se encontraba descansando del viaje, pero que presentaría una moción explicativa sobre lo ocurrido.

El 16 de octubre de 2018, la Comisionada Especial, mediante escrito titulado *Comparecencia Especial*, nos informó -en esencia- que el licenciado Sánchez Pérez no se había expresado en cuanto a la *Orden* emitida por ésta el 19 de septiembre de 2018 para que en el término de cinco (5) días mostrara causa por la cual el procedimiento no debía continuar sin su comparecencia. Así, nos solicitó que nos expresáramos en torno al curso de acción en el caso. En atención a ello, el 23 de octubre de 2018 emitimos una *Resolución* en la que dispusimos que la

Comisionada Especial estaba facultada para celebrar una vista en rebeldía ante el reiterado incumplimiento del querellado con las órdenes emitidas.

El 24 de octubre de 2018 **-pasado exactamente un (1) mes desde que el licenciado Sánchez Pérez le informó a la secretaria de sala que presentaría un escrito para exponer las razones que motivaron su incomparecencia a la vista del 19 de septiembre de 2018-** el querellado presentó un *Escrito Explicativo* en el que manifestó que su hijo había sufrido un fallo renal, por lo que tuvo que viajar a Florida, Estados Unidos, para atender la situación. Del mismo modo, se excusó por no presentarse a la vista señalada ante la Comisionada Especial y añadió que se encontraba realizando gestiones para que un compañero abogado lo representara en el caso, pues entendía que no estaba en condición de comparecer por derecho propio.

De la documentación que obra en autos se desprende que la Comisionada Especial, luego de examinar la *Resolución* dictada por este Foro el 23 de octubre de 2018, así como varios escritos presentados por las partes, determinó el 15 de noviembre de 2018 que lo procedente en el caso era celebrar una vista en rebeldía, a la que el querellado podría comparecer por derecho propio o representado por abogado y contrainterrogar testigos. Sin embargo, el letrado no tendría el beneficio de presentar prueba alguna.

El 21 de noviembre de 2018, el Lcdo. Francisco Sánchez Ramírez (licenciado Sánchez Ramírez) presentó una moción para asumir la representación legal del querellado y solicitar que se dejara sin efecto la anotación de rebeldía. Así las cosas, la Comisionada Especial declaró *ha lugar* la solicitud para asumir la representación legal del licenciado Sánchez Pérez y *no ha lugar* a la petición para el levantamiento de la rebeldía. Ante su determinación, le concedió al Procurador General un término de veinte (20) días para que le informara al representante legal del querellado los testigos que utilizaría en la vista en rebeldía, un resumen de sus testimonios y le entregase copia del informe pericial emitido por el Instituto de Ciencias Forenses.

Inconforme con la determinación de la Comisionada Especial, el licenciado Sánchez Ramírez presentó una *Moción urgente en solicitud de reconsideración*, en la que argumentó que el mecanismo procesal de anotación de rebeldía dejaría a su representado en un estado de indefensión que afectaría su vida laboral productiva como abogado y profesor universitario por más de veinte (20) años. Expuso, además, que dicho proceder laceraba el derecho del licenciado Sánchez Pérez a presentar prueba científica para refutar las alegaciones en su contra relacionadas con la presunta falsificación de firmas e iniciales en el instrumento público en controversia y a contratar un perito calígrafo para examinar objetivamente

el informe pericial realizado por el Instituto de Ciencias Forenses.

Luego de varias mociones interlocutorias presentadas por las partes y de la celebración de una vista sobre el estado de los procedimientos, la Comisionada Especial dejó sin efecto la anotación de rebeldía. Así, se le permitió al querellado presentar una segunda contestación a la querella enmendada y anunciar a su perito. Se le reiteró al licenciado Sánchez Ramírez que, según acordado por las partes, su representado aceptaría todos los cargos, salvo aquellos en los que se le imputaba la falsificación de la firma e iniciales del señor Rivera González.

En cumplimiento con lo ordenado por la Comisionada Especial, el querellado presentó su segunda contestación a la querella enmendada y anunció a su perito calígrafo. Luego de varias situaciones que impidieron la celebración de la conferencia con antelación a la vista y la vista en su fondo, el 20 de noviembre de 2019 se efectuó una vista sobre el estado de los procedimientos. Allí, la Comisionada Especial dispuso que las vistas que habían quedado pospuestas se celebrarían el 25 de marzo de 2020 y los días 2, 3 y 4 de junio de 2020, respectivamente.

No obstante, la tramitación del caso quedó interrumpida por motivos de la pandemia del COVID-19. Así, el proceso disciplinario se reanudó pasados más de dos (2) años cuando la Comisionada Especial, mediante *Orden* del 3 de septiembre de 2021, señaló una vista sobre

el estado de los procedimientos para el 21 de septiembre de 2021. Llegada esta fecha, y luego de discutir los asuntos pendientes,[16] las partes acordaron celebrar la conferencia con antelación a la vista el 17 de diciembre de 2021 y la vista en su fondo los días 21 y 26 de enero de 2022.

Durante la conferencia con antelación a la vista, las partes, junto con la Comisionada Especial, discutieron el informe de conferencia entre abogados y establecieron el plan que regiría los procedimientos durante la vista en su fondo. Sorpresivamente, el Procurador General informó haber recibido una comunicación el 22 de septiembre de 2021 por parte del señor Rivera González -quien a la fecha tenía 96 años- en la que expresó su deseo de archivar la querella presentada en contra del licenciado Sánchez Pérez debido a que su estado de salud estaba comprometido y, por recomendación de su médico, no debía exponerse a emociones fuertes que afectaran su corazón.

Ante este panorama, la Comisionada Especial expresó que la solicitud de desistimiento de la querella instada

---

[16] A saber: (1) verificar si el perito del querellado obtuvo acceso a la Escritura Núm. 43 original y preparó su informe, y (2) atender el escrito presentado el 17 de septiembre de 2021 por el representante legal del licenciado Sánchez Pérez, titulado *Moción solicitando se descubra prueba exculpatoria para propósitos de impugnación*. Por no haber controversia en cuanto al primer asunto, las partes procedieron a discutir la moción presentada por el querellado. En ésta, argumentó que, a la luz de la doctrina establecida en Brady v. Maryland, 372 US 83 (1963), y en Giglio v. U.S.A., 405 US 150 (1972), el Departamento de Justicia de Puerto Rico tenía el deber de entregarle el expediente de una investigación criminal de la que pudo ser objeto el perito calígrafo que utilizaría el Procurador General. Así las cosas, la Comisionada Especial le concedió un término al Procurador General para expresar su posición al respecto y al querellado para replicar. El 19 de noviembre de 2021, luego de examinar los escritos presentados por las partes y de realizar su propia investigación, la Comisionada Especial declaró *no ha lugar* la petición del querellado para que se le entregara el expediente de la investigación criminal aludida.

por el señor Rivera González debió haberse presentado ante este Tribunal, organismo con facultad para atender y disponer de este tipo de asuntos. Añadió que le preocupaba el hecho de que el señor Rivera González no estuviera disponible, pues sería complicado para el Procurador General presentar su prueba ante la existencia de unas áreas de penumbra que solo el promovente podía aclarar.[17] La Comisionada Especial también manifestó su preocupación en torno a que el querellado no tendría la oportunidad de contrainterrogar al promovente -situación que lesionaría su derecho constitucional a un debido proceso de ley- y al hecho de que el perito del licenciado Sánchez Pérez no lograra llegar a una conclusión sobre la alegada falsificación de firma e iniciales del promovente. Finalmente, exhortó a las partes a evaluar la posibilidad de llegar a un acuerdo para agilizar la tramitación del caso, dado que el querellado había aceptado ser responsable de los cargos que se le imputaron, salvo aquellos relativos a la falsificación de firma e iniciales del señor Rivera González. La Comisionada Especial entendió que este proceder simplificaría la resolución del caso, pues las controversias se reducirían a los cargos no aceptados por el licenciado Sánchez Pérez.

---

[17] Entre estas: ¿qué quiso decir el promovente en la queja al indicar que la firma de la copia [certificada] de la Escritura Número 43 que se le entregó no era igual a la suya que aparece en la Escritura [de Primera Hipoteca]? ¿por qué si el promovente no firmó la Escritura Número 43 fue al Registro de la Propiedad para indagar si había sido inscrita?

El 11 de enero de 2022, las partes presentaron una *Solicitud conjunta de enmienda al informe de conferencia entre abogados*, en el que anunciaron que añadirían varias estipulaciones de hechos y que eliminarían, entre otros, los informes de sus respectivos peritos. De esta forma, indicaron que no presentarían prueba testifical ni pericial, y que someterían el caso por las estipulaciones y la prueba documental anunciada, por lo que no sería necesario la celebración de una vista en su fondo.

El 10 de marzo de 2022, la Comisionada Especial presentó su *Informe*, en el que nos recomendó suspender al licenciado Sánchez Pérez del ejercicio de la abogacía por un término no menor de tres (3) meses. El querellado, por su parte, nos solicitó la imposición de una sanción disciplinaria menor de tres (3) meses. Así las cosas, el caso quedó sometido en los méritos para su adjudicación el 12 de abril de 2022.

A base de lo anterior, nos corresponde emitir una decisión final a la luz de la conducta desplegada por el licenciado Sánchez Pérez, así como del derecho y la casuística aplicable. Veamos.

## II

A. <u>Derecho aplicable</u>

El Código de Ética Profesional, *supra*, recoge las normas mínimas de conducta que rigen a los miembros de la profesión legal y promueven un comportamiento ejemplar por parte de los abogados en el desempeño de su delicada e

importante labor. *In re* García Aguirre, 175 DPR 433, 439 (2009); *In re* Matos González, 149 DPR 817, 819 (1999); *In re* Filardi Guzmán, 144 DPR 710, 715-716 (1998). Para desempeñar esta responsabilidad, los miembros de la profesión jurídica tienen el deber de administrar la justicia, y de interpretar y aplicar las leyes con la mayor y más excelsa competencia, responsabilidad e integridad. Preámbulo del Código de Ética Profesional, *supra*.

No obstante, además de los Cánones de Ética Profesional, existen otras fuentes de obligaciones o cuerpos normativos para los abogados y notarios, por lo que su incumplimiento también los expone a las sanciones disciplinarias que este Tribunal estime procedentes. *In re* Santiago Rodríguez, 206 DPR 853, 858-859 (2021).

1. Canon 9

En lo que nos atañe, el Canon 9 del Código de Ética Profesional, *supra*, establece que "el abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto". En el pasado hemos señalado que el deber impuesto por este canon, el cual está directamente relacionado con la obligación de todo abogado de propiciar la buena administración de la justicia, exige el cumplimiento diligente de las obligaciones asumidas y las órdenes de los foros judiciales. *In re* Feliciano Rodríguez, 198 DPR 369, 378 (2017) (citando a *In re* Rodríguez García, 197 DPR 515, 523

(2017)). En un sentido más específico, el deber de respeto que emana del Canon 9, *supra*, se manifiesta en dos (2) vertientes específicas: (1) el mandato de respetar las órdenes y directrices emitidas por los tribunales (respeto a la autoridad judicial), y (2) la obligación de respetar a los jueces, empleados y funcionarios del tribunal en sus comparecencias e interacciones con estos (respeto de carácter cívico). S. Steidel Figueroa, *Ética del abogado y responsabilidad disciplinaria*, San Juan, Eds. Situm, 2016, pág. 371.

En *In re* Meléndez Mulero, 2022 TSPR 03, 208 DPR __ (2022), reafirmamos nuestra postura de que todos los abogados tienen la obligación de atender y acatar las órdenes de los tribunales, así como las de cualquier otro foro al que se encuentren obligados a comparecer. Este proceder ético toma mayor relevancia cuando los miembros de la profesión legal se enfrentan a procesos disciplinarios, pues deben responder diligente y oportunamente a nuestros requerimientos y mandatos. Íd. Esta responsabilidad se extiende, además, a otras dependencias gubernamentales que intervienen en el proceso disciplinario, como lo es la Oficina del Procurador General adscrita al Departamento de Justicia. Íd. (citando a *In re* Malavé Haddock, 207 DPR 573, 582 (2021); *In re* Martínez Jiménez, 206 DPR Ap. (2021)). Así las cosas, el letrado que actúe con dejadez y menosprecio a las órdenes de este Foro o a los requerimientos del

Procurador General viola el presente canon. *In re* Meléndez Mulero, *supra*. El letrado que desatiende las órdenes emitidas en el curso de un proceso disciplinario despliega una conducta desobediente, apática e irrespetuosa que se aparta de los más altos postulados éticos que rigen la profesión legal. Íd. De este modo, hemos entendido que una ofensa de este tipo constituye motivo suficiente para suspender de manera inmediata e indefinida a los miembros que empañan la integridad y prestigio de nuestra honrosa profesión. Íd.

2. Canon 12

El Canon 12 del Código de Ética Profesional, *supra*, impone el deber a los abogados de ser concisos y exactos en el trámite y presentación de las causas. Para cumplir con esa obligación, se consignó en el referido canon que los abogados deben "desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución". Íd. Así pues, hemos sido enfáticos en reiterar que el Canon 12 impone a los abogados el deber de ser puntuales, responsables y diligentes en la tramitación de las causas encomendadas. *In re* Bermúdez Tejero, 206 DPR 86, 95 (2021). Éste es un deber ineludible que los togados deben cumplir con gran recelo. *In re* Maldonado Maldonado, 197 DPR 802, 812 (2017) (citando a *In re* Nazario Díaz, 195 DPR 623, 625 (2016), *In re* Hernández González, 188 DPR 721, 727 (2013)).

3. <u>Canon 18</u>

Por su parte, el Canon 18 del Código de Ética Profesional, *supra*, dispone que es impropio que un abogado asuma "una representación profesional cuando está consciente de que no puede rendir una labor idónea, competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". Como corolario de esta obligación, se les exige a los abogados rendir una labor idónea, competente, diligente, oportuna y sin dilaciones, pues actuar en contrario, implica desplegar una conducta negligente, indiferente y displicente en los asuntos que le han sido encargados. *In re* Rádinson Pérez *et al.*, 204 DPR 522 (2020); *In re* Peña Ríos, 202 DPR 5, 23 (2019). Este precepto ético es de tal importancia, que hemos expresado en el pasado que las situaciones personales, problemas matrimoniales o familiares o padecimientos de salud, no justifican desatender las responsabilidades éticas que rigen el ejercicio de la abogacía en nuestra jurisdicción. *In re* González Díaz, 201 DPR 145, 154 (2018); *In re* Torres Román, 195 DPR 882, 893 (2016); *In re* Díaz Nieves y Díaz Rivera, 189 DPR 1000, 1013 (2013); *In re* Ortiz López, 169 DPR 763, 770 (2007).

4. <u>Canon 19</u>

A tenor de los principios del Canon 19 del Código de Ética Profesional, *supra*, "el abogado debe mantener a su cliente siempre informado de todo asunto importante que

surja en el desarrollo del caso que le ha sido encomendado". El cumplimiento del deber impuesto por este precepto requiere que la comunicación con el cliente sea efectiva y eficiente, pues es imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente. *In re* Mondríguez Rivera, 205 DPR 824, 831 (2020). Por lo tanto, infringen el Canon 19 aquellos juristas que no atienden los reclamos de información de sus clientes, no le informan de un resultado adverso en la gestión encomendada, no mantiene informado al cliente con relación al estado o la situación procesal del caso, o simplemente, le niega información de su caso. *In re* Nazario Díaz, 198 DPR 793, 804 (2017).

5. Canon 35

El Canon 35 del Código de Ética Profesional, *supra*, dispone, en su parte pertinente, que "el abogado debe ajustarse a la sinceridad de los hechos al [….] redactar afidávit[s] u otros documentos". Así pues, la clase togada tiene la obligación insoslayable de desempeñar sus funciones con integridad, sinceridad y honradez. *In re* Pagán Díaz, 198 DPR 398, 407 (2017). Cónsono con lo anterior, los juristas -ya sea en su capacidad de notarios o abogados litigantes- deben plasmar en todos los documentos que firman o redactan hechos ciertos que sean compatibles con la realidad. Íd., pág. 408. De imputársele a un abogado la violación del referido postulado ético, no puede levantarse como defensa el que

no se haya obrado de mala fe, deliberadamente, con la intención de engañar o defraudar, así como que no se le haya causado daño a un tercero. Íd., pág. 407.

6. Canon 38

Por último, el Canon 38 del Código de Ética Profesional, *supra*, instituye el deber de todo abogado de exaltar el honor y la dignidad de su profesión, y de evitar hasta la apariencia de conducta profesional impropia. Ello implica que todo letrado debe desempeñarse de forma escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa. *In re* Fingerhut Mandry, 196 DPR 327, 333 (2016).

7. La fe pública notarial

La Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como *Ley Notarial de Puerto Rico*, 4 LPRA sec. 2001, dispone en su Art. 2 que:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. **La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.** (Énfasis nuestro).

Anteriormente hemos expresado que el notario tiene el deber de ser cuidadoso y de desempeñar sus funciones con

esmero, diligencia y estricto celo. *In re* Vázquez Margenat, 204 DPR 968, 2 (2020). Al dar fe, el notario garantiza que los hechos y las circunstancias que acredita fueron percibidos y comprobados con sus sentidos o ejecutados por él. Íd., pág. 3. Así, la fe pública notarial es tan importante que resulta inmaterial que el notario falte a la verdad intencionalmente para que incurra en una violación a ella. Íd., págs. 4-5.

## III

Analizada la normativa disciplinaria pertinente entendemos que conforme refleja el *Informe de la Comisionada Especial*, el licenciado Sánchez Pérez infringió los Cánones 9, 12, 18, 19, 35 y 38 del Código de Ética Profesional, *supra*, así como la fe pública notarial. Veamos.

Al estudiar el tracto procesal del caso, se desprende que el licenciado Sánchez Pérez, al tramitar la cancelación de la hipoteca que gravaba la propiedad inmueble del señor Rivera González, no realizó una labor capaz y diligente, pues tardó casi cinco (5) años en presentar la referida escritura en el Registro de la Propiedad. No fue hasta que el señor Rivera González presentó la queja en contra del querellado el 4 de febrero de 2011, que éste último acudió al Registro de la Propiedad a realizar los trámites para inscribir la Escritura Núm. 43. Así se desprende del recibo de presentación con fecha del 24 de marzo de 2011. Además,

el letrado no mantuvo informado al señor Rivera González sobre el estado de la gestión encomendada; ejemplo de ésto son las llamadas telefónicas constantes y las comunicaciones escritas del promovente en las que le requería al querellado conocer el estatus de la inscripción de la Escritura Núm. 43 y la solución del asunto.

El comportamiento exhibido por el licenciado Sánchez Pérez según descrito en los párrafos que anteceden, nos obliga a concluir que el letrado infringió los Cánones 18 y 19 del Código de Ética Profesional, *supra*, al no mantener informado al promovente, y por conducirse con dejadez, indiferencia y despreocupación en los asuntos para los que fue contratado.

Por otro lado, el licenciado Sánchez Pérez contravino la fe pública notarial y el Canon 35 del Código de Ética Profesional, *supra*, al dar fe en la Escritura Núm. 43 de un hecho falso relativo al estado civil del promovente. Resulta pertinente precisar que, de las distintas comparecencias del querellado, así como de la prueba que obra en autos, surge que éste aceptó haber cometido un error en la Escritura Núm. 43 al consignar que el estado civil del promovente era soltero cuando en realidad era casado. Asimismo, reconoció que debió haber indagado más como notario y no descansar única y exclusivamente en la información provista por el señor Rivera González. Lo anterior denota falta de preparación e investigación al

momento de otorgar el instrumento público. Dicha falta de diligencia y de cuidado por parte del licenciado Sánchez Pérez al momento de autorizar la Escritura Núm. 43, sin duda alguna, lo llevó a quebrantar su deber de sinceridad y honradez, en contravención al Canon 35 del Código de Ética Profesional, *supra*. No obstante, con respecto a la presunta falsificación de firma e iniciales del promovente, coincidimos con la Comisionada Especial en cuanto a que, del expediente del caso, no surge evidencia que sustente dichas alegaciones. Estamos convencidos de que las interrogantes planteadas por la Comisionada Especial sobre dicho asunto fueron atendidas detalladamente en su *Informe* conforme a la prueba recibida. De ahí que sus determinaciones de hecho merezcan nuestra mayor deferencia. Finalmente, acogemos las conclusiones de la Comisionada Especial, quien -luego de examinar las alegaciones de las partes y la prueba- concluyó que no existe base alguna para determinar que el señor Rivera González no firmó e inició la Escritura Núm. 43 o que su firma haya sido falsificada.

Asimismo, la conducta dilatoria, indiferente, irresponsable y poco empática exhibida por el licenciado Sánchez Pérez, al no contestar ni solucionar oportunamente los reclamos del promovente, así como al presentar la Escritura Núm. 43 en el Registro de la Propiedad a casi cinco (5) años desde que el señor Rivera González le confió la encomienda, se caracterizó por ser contraria a

su deber de exaltar el honor y la dignidad de la profesión, según dispuesto en el Canon 38 del Código de Ética Profesional, *supra*.

En lo concerniente a los Cánones 9 y 12 del Código de Ética Profesional, *supra*, durante el trámite disciplinario quedó claramente establecido que la dejadez e indiferencia del querellado hacia las órdenes de este Foro y de la Comisionada Especial provocaron un retraso significativo en el caso, conducta que reprobamos vehementemente. Algunas de las situaciones que ejemplifican la conducta antiética desplegada por el letrado son: (1) desatender nuestras órdenes para que contestara la querella presentada en su contra; (2) no contestar la querella presentada por el Procurador General el 29 de junio de 2016 hasta pasados casi dos (2) años, y (3) no comparecer a la vista inicial celebrada el 23 de agosto de 2017 ante la Comisionada Especial sin haber justificado su incomparecencia.

Se añade a esta conducta, la ausencia no excusada del letrado a la vista pautada para el 19 de septiembre de 2018. **No fue hasta pasados exactamente treinta (30) días que el licenciado Sánchez Pérez presentó una *Moción Explicativa* para justificar su incomparecencia. Esto a pesar del término de cinco (5) días concedido por la Comisionada Especial para expresarse al respecto.** Resulta importante destacar que estos últimos eventos no fueron considerados en la querella enmendada debido a que

ocurrieron con posterioridad al 11 de mayo de 2018, fecha en que la misma fue interpuesta. Sin embargo, el estado de derecho que permea en nuestra jurisdicción nos permite, a modo de excepción, traer al procedimiento disciplinario conducta impropia adicional cuando se refleje del expediente ante la consideración del Tribunal y el abogado la conoce, ha tenido la oportunidad de defenderse y se le han salvaguardado las garantías de un debido proceso de ley. *In re* Colón Hernández, 189 DPR 275, 281-283 (2011); *In re* Martínez Almodóvar, 180 DPR 805, 825-826 (2011). Así las cosas, determinamos que la conducta impropia adicional cometida por el licenciado Sánchez Pérez consta de los autos ante nuestra consideración, era conocida por el abogado, quien tuvo la oportunidad de defenderse en todo momento, de contratar un abogado y de lograr que se dejara sin efecto la anotación de rebeldía en su contra, por lo que, las garantías constitucionales que emanan del debido proceso de ley fueron protegidas efectivamente. En virtud de ello, consideraremos también como parte del procedimiento disciplinario la conducta desplegada por el licenciado Sánchez Pérez ante su ausencia a la vista del 19 de septiembre de 2018.

Como bien expresó la Comisionada Especial en su *Informe*, la conducta exhibida por el querellado desde la presentación de la querella hasta el momento en que su representante legal intervino, es demostrativa de una inclinación a desatender y desobedecer las órdenes

dictadas en el procedimiento disciplinario. Esto, indudablemente tuvo el efecto de causar dilaciones innecesarias en la tramitación del caso. Al exhibir dichas conductas, el licenciado Sánchez Pérez tampoco exaltó el honor y la dignidad de la profesión legal. Al así actuar, se apartó de los Cánones 9, 12 y 38 del Código de Ética Profesional, *supra*.

**IV**

Nos resta determinar la sanción disciplinaria que le impondremos al licenciado Sánchez Pérez como resultado del comportamiento exhibido. Al fijar la misma, debemos considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si el caso que se examina constituye la primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) si medió ánimo de lucro en su actuación; (7) si resarció al cliente; (8) cualesquiera otras consideraciones, ya sean atenuantes o agravantes que medien en relación con los hechos. *In re* Soto Aguilú, 2021 TSPR 162, 208 DPR __ (2021); *In re* Stacholy Ramos, 207 DPR 521, 531 (2021).

Como indicáramos al inicio de esta *Opinión Per Curiam*, **es la tercera ocasión en que el licenciado Sánchez Pérez se encuentra inmerso en un proceso disciplinario.** Esto nos permite razonablemente inferir que su reputación en la comunidad es cuestionable. De ahí que debamos sopesar su

reincidencia con mayor rigurosidad al imponer la sanción disciplinaria. Ciertamente, no estamos ante el escenario de una primera falta o conducta aislada que razonablemente nos permita sancionar al licenciado Sánchez Pérez con una mera censura. Este proceder simplemente no se sostendría bajo el estándar de proporcionalidad que debemos aplicar al evaluar la severidad de la conducta y actuaciones antiéticas cometidas por el querellado. Por otro lado, aunque el licenciado Sánchez Pérez aceptó su responsabilidad y se allanó a la mayoría de los cargos presentados en su contra por el Procurador General, entendemos que su arrepentimiento, como único atenuante del comportamiento exhibido, resulta ser insuficiente. Especialmente, ante su tardanza de casi cinco (5) años en presentar la Escritura Núm. 43 en el Registro de la Propiedad, lo que sin lugar a duda causó desasosiego en el ánimo del promovente. No dudamos que el licenciado Sánchez Pérez haya atravesado por un sinnúmero de situaciones personales que lo afectaron grandemente. Sin embargo, ello no justifica que haya actuado al margen de los preceptos éticos que rigen el ejercicio de la abogacía. Máxime, luego de haber sido suspendido de la notaría en dos (2) ocasiones, la última vez de manera indefinida.

Así pues, resulta claro que los letrados deben abstenerse de aceptar encomiendas cuando son conscientes de que no pueden brindar una representación legal adecuada, ya sea porque no están aptos para desempeñar una

labor diligente, con el más profundo saber y responsabilidad, o porque existen situaciones de carácter personal -sean éstas previsibles o no- que inciden directa o indirectamente en la ejecución de una gestión profesional competente. Nos hacemos eco de las expresiones de la Comisionada Especial al exponer en su *Informe* que es precisamente en las situaciones difíciles, las cuales todos en algún momento hemos enfrentado, cuando se mide el compromiso y profesionalismo de un abogado. Sin duda alguna, entendemos que estas dos (2) características, no quedaron demostradas en el presente caso.

**V**

Analizado el derecho aplicable, la jurisprudencia interpretativa esbozada, así como las infracciones éticas incurridas por el licenciado Sánchez Pérez, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía. En cuanto al ejercicio de la notaría no tenemos nada que proveer, pues el señor Sánchez Pérez se encuentra suspendido de dicha práctica de manera indefinida desde el 2010.

Le ordenamos al señor Sánchez Pérez notificar a todos sus clientes su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, así como informar inmediatamente de su suspensión a los distintos foros judiciales y

administrativos en los que tenga algún asunto pendiente. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

Notifíquese vía correo electrónico y personalmente esta *Opinión Per Curiam* y Sentencia al señor Sánchez Pérez a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Miguel A. Sánchez Pérez               CP-2016-4        Conducta
     (TS-5362)                                        Profesional

SENTENCIA

En San Juan, Puerto Rico a 19 de julio de 2022.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión del Lcdo. Miguel A. Sánchez Pérez de manera inmediata e indefinida del ejercicio de la abogacía.

El señor Sánchez Pérez deberá notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de la *Opinión Per Curiam* que antecede y de esta Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

Notifíquese la *Opinión Per Curiam* que antecede y esta Sentencia vía correo electrónico y personalmente al señor Sánchez Pérez a través de la Oficina del Alguacil de este Tribunal.

        Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                          Javier O. Sepúlveda Rodríguez
                          Secretario del Tribunal Supremo